[Civ. No. 26868. First Dist., Div. Four. July 29, 1970.]

O. D. DONNELL, Jr., et al., Plaintiffs and Respondents, v. BISSO BROTHERS et al., Defendants and Appellants.

**COUNSEL**

Swartfager, Allen & Mawson, Maxwell, Allen & Mawson and Morris M. Mawson for Defendants and Appellants.

James F. Kemp for Plaintiffs and Respondents.

**OPINION**

**DEVINE, P. J.**—Defendants appeal from a judgment which grants to plaintiffs a non-exclusive easement for road purposes over defendants' land and enjoins interference with the road and which awards plaintiffs compensatory damages of $4,000 and punitive damages of $5,000. For convenience, the parties are called Donnell and Bisso respectively although there is joint ownership of property on each side, and the single names are used although some of the acts described herein were done by agents acting under orders of one or another of the parties.

### General Facts

Donnell owns two parcels of land, Parcel One, a quarry to the west of a railroad right of way and to the west of the Bisso ranch, and the other, a ranch on which hay is grown which is to the northeast of the Bisso ranch, and which is called Parcel Three. Prior to most if not all of the events narrated herein, the hay from Parcel Three was transported on a road going to the north, and Bisso was not affected by the traffic. During

winter storms of 1966-1967 the northerly road was destroyed. There were, however, means of access from a highway to the west of Parcel One (State Highway 121) to Parcel Three. These means were: 1) a road through the quarry land, which intersected with Road F, a road running north on the Bisso land, on which Donnell had an easement and, 2) Road G, considerably north of the quarry road, which traversed the ranch of a third person (not a party to this lawsuit), Smith. This road also connected with Road F. But the quarry road, although usable for some vehicles in the transportation of hay from Parcel Three, was inadequate for the passage of large hay trucks, and Road G was in a state of disrepair.

For some years, there had been contemplated by Donnell, Bisso and Smith the construction of a road which would run in a direction generally west-east from Highway 121 to Road F over Smith and Donnell lands. Bisso had proposed the plan in 1964. The evidence shows that the route is on firm land, although much of the nearby area is marshy. Negotiations were carried on in early 1967, and were completed between Donnell and Smith. Donnell relinquished his easement to Road G on the Smith property, but he and Smith gave mutual easements over the proposed new road. Northwestern Pacific Railway allowed to Donnell a crossing over its tracks which lie just west of the Bisso land. But Bisso would not agree to join the project. There is no conclusive evidence of the reason for the refusal. Bisso testified that Smith would exact from Bisso, as a condition for use of the new road, cancellation of other access rights and flood control rights (although the agreement which was prepared for Bisso's signature does not bear this out, he contended that the demands were presented to him); Donnell presented evidence that Bisso wanted title to the land on which the road would be constructed with easements to be granted to Donnell and Smith but not to other neighbors whom Donnell was willing to accommodate. An impasse resulted; Donnell terminated a license of Bisso to use the quarry road across Donnell's land; Donnell placed rock and gravel on Road F, preparatory to building the new road from the railroad property to Road F, whereupon Bisso removed this material.

Following this exchange, Donnell obtained a temporary restraining order forbidding Bisso to interfere with construction of the new road. Proceeding under the restraining order, Donnell completed the road to a tie-in with Road F. The court denied a preliminary injunction on the ground that, the road having been completed, the matter of preliminary relief was moot. Meanwhile, Bisso had been informed by a surveyor engaged by him that Bisso owned a portion of the land between the railroad land and Road F. The new road, therefore, encroached on Bisso's land according to this information. Bisso erected a fence at the intersection of the new road with Road F; Donnell removed the fence; Bisso replied by bulldozing

a portion of the roadbed. The road remained impassable at the time of trial.

### Trespass By Donnell

It is undoubted that Donnell committed a trespass on Bisso's land. The court found that there was an encroachment; the jury which tried the issues of trespass and damages impliedly found so, for it awarded $1, the amount of damages prayed for by Bisso in the cross-complaint; Donnell's witness Passarino, a licensed surveyor, testified to the encroachment; Donnell admits it in his brief on appeal. Donnell attempts, however, in his brief to show that the area of encroachment is less than that which was found by the trial judge, by the use of a rather elaborate diagram which was prepared and signed by an unidentified person named Seal, who did not testify. The work evidently was done subsequent to trial, and the trial judge did not see it. There is no appeal by Donnell. Hence, we shall accept the finding and the judgment of the trial court. The area of encroachment as found by the court is of these dimensions: 41.20 feet, thence 31.93 feet, thence 11.84 feet, thence 35.98 feet to the point of beginning. The parcel was admitted by Bisso to be unusable and of nominal value; nevertheless, it was owned by Bisso and was trespassed upon by Donnell.

We find no difficulty, however, in accepting the proposition that Donnell's trespass was made in good faith. The jury so decided (we know this not only from the nominal amount of the verdict but also from colloquy between the court and the foreman of the jury). The court found that Donnell, reasonably and in good faith and relying on a survey and a railroad map, believed that there was no encroachment on the Bisso property.

There is no appeal from the judgment on the cross-complaint, but the above recital is necessary in order to discuss the two issues on appeal, one legal (damages), and the other equitable (injunction).

### Trespass By Bisso

It is conceded that Bisso did not trespass on any land owned by Donnell. But Donnell contended that his rights of way were invaded in that: 1) it was wrongful of Bisso to remove the rock and gravel from Road F on which Donnell had a right of way; 2) Bisso, in cutting the gap from Road F, actually sliced into part of the railroad right of way and because the railroad had granted a license to Donnell, Bisso trespassed on Donnell's property right; 3) Bisso wrongfully bulldozed the roadbed which had been built. For this, Donnell sought damages, compensatory in the amount of $5,000 and punitive in the amount of $10,000. Since the prayer of the complaint (together with that of a supplemental complaint) was for dam-

ages of a total of $4,000 plus punitive damages in the sum of $5,000, the verdict was plainly incorrect. It was reduced by the court to $4,000 for compensatory damages and $5,000 for punitive damages.

## Compensatory Damages

In discussing the matter of compensatory damages, we shall consider preliminarily two elements which should not play any part in an award in this case. The first is the curious addition of $1 to the round figure of $5,000 in the verdict. Apparently, this was to counteract the award of $1 which the jury decided it had to award Bisso because of Donnell's undoubted, though innocent, trespass. In itself, this award of $1 to Donnell is of no moment, but it is significant, particularly in connection with the obviously excessive verdict, in showing a looseness of thought in the process of assessing damages. ■ The second subject of comment, before our discussion of those damages ordinarily the subject of trespass actions, is that the jury was instructed that if they found that *either party* was entitled to damages, they should consider not only other elements of damage as described, but also they should award such sum as would compensate such party reasonably for any discomfort, anxiety, annoyance and mental and emotional distress as had been suffered and had proximately resulted from the trespass. There was no evidence of these elements. The case does not resemble that of *Acadia, California, Ltd.* v. *Herbert,* 54 Cal.2d 328, 337 [5 Cal.Rptr. 686, 353 P.2d 294] (cited in support of the instruction), in which the trespass was shutting off of water, which caused a relapse of mental illness of a plaintiff. Moreover, Donnell had not even pleaded the elements covered by the instruction. Bisso had done so, and evidently had offered the instruction, but it was limited, as offered, to Bisso's damages. The court changed it for the benefit of "either party." Thus, Bisso is not chargeable with having consented to the instruction as it applies on behalf of Donnell. Since the instruction was lacking in evidentiary support, it should not have been given.

■ Nevertheless, we might well sustain the judgment if ordinary damages, apart from those related to distress, had been proved. They were not, except one small amount.

In the first place, the removing of the rock and gravel from Road F was not shown to have caused any legally compensable damages. It is true, as the jury was instructed, that the holder of an easement may have a secondary easement for the purpose of making repairs, renewals and replacements on the property that is servient to the easement. But the material that was placed on Road F was not for this purpose. It would have been used largely, if not wholly, in constructing the *encroachment.* If it might

have been used in part for construction on Donnell's true right of way, this was not shown; and, anyway, to have built but *part* of the road would not, so far as the evidence shows, have given Donnell any benefit.

Second, the carving out of part of the railroad land (it could not have been a large area) on which Donnell had the license, was not shown to have caused any but purely nominal damages. Here, again, the road without use of the encroachment on Bisso's property is not shown to have been serviceable for the large hay trucks, if for any vehicles at all; and as to smaller ones, the quarry road was available to Donnell for access to Road F and to Parcel Three. There is not a word of testimony about monetary loss in Donnell's having to use other means of access.

Finally, there is the matter of actual destruction of the new road east of the railroad land, a good deal of which (if not all) was encroachment. Donnell had paid $651.60 for construction of the segment of road including the part which constituted the trespass. This amount of compensable damages is sustainable; without apportionment, because of the difficulty of measuring and the small amount.

### Punitive Damages

■ The trial court having found that Bisso removed roadbed in areas over which Donnell had the right to maintain the road, some compensatory damages are sustainable (judge and jury viewed the property and were able to compare it visually with the maps and the testimony). Therefore, there is a basis for punitive damages, because the court also found that the exercising of dominion over and the interfering with Donnell's rights were malicious acts done with intent to vex and harass Donnell.

The award was a proper one. This lawsuit had been filed at the time of the bulldozing episode and a peaceable way of deciding the parties' rights was at hand. Resort to self-help is not necessarily justified by the fact that the acting party is later shown to have had title. (*Daluiso* v. *Boone,* 71 Cal.2d 454 [78 Cal.Rptr. 707, 455 P.2d 811].) Besides, Bisso did not have title to all of the roadbed which he destroyed. Under all of the circumstances, and considering that every intendment must be regarded in favor of the judgment, we affirm the $5,000 award.

### The Easement and The Injunction

The court declared that Donnell is the owner of a non-exclusive easement for road purposes for the benefit of both parcels of his land (quarry and ranch) over the small parcel which constitutes the encroachment, and the court enjoined Bisso from interfering with the new road. This was

done upon the court's conclusions that in constructing the road, Donnell acted in good faith believing that he was causing no encroachment; that the damage because of the encroachment is merely technical and nominal in the amount of $1; that the damage to Donnell if he were required to remove the encroachment would be $8,500 (the cost of building the entire road); and that this damage would be greatly disproportionate to Bisso's damage. The court acted upon the principle of balancing of hardships.

The judge, purposing to do equity, required Donnell to deliver a deed granting Bisso a non-exclusive easement for road purposes over the entire new road; provided, that Bisso pay one-fourth of the construction cost and that Bisso agree in writing to bear one-half of the cost of future maintenance and improvement of the road. The judge found that ever since Bisso acquired his land, Bisso has desired and intended to construct a road along the route of Donnell's road and that if Bisso had the right to use that road, the value of Bisso's lands would be greatly enhanced.

Appellant Bisso contends: 1) that the subject of imposing a servitude on any part of his land, by the use of an equitable doctrine, was not pleaded, nor was it a matter considered during the trial; 2) that there is no authority for the imposing of an easement for new construction on behalf of a *plaintiff*, and that to declare such an easement amounts to granting a plaintiff a private right of eminent domain; and 3) that the court could not accomplish its purpose of giving a reciprocal easement to Bisso because to do so would affect the rights of a third person, Smith, who was not a party to the lawsuit.

The first of these considerations is not important in view of our decision upon the third. In passing, we remark that although the amended and supplemental complaint does not set forth the facts upon which the court based its findings on relative hardships, and although there does not appear to have been an acceptance by the conduct of the parties during the trial of a contest on the unpleaded but found facts, or of a contest on the theory on which the equitable part of the judgment is based, nevertheless the prayer of the complaint for injunction is sufficient to save the lawsuit for whatever amendment and subsequent procedural and evidentiary matters may follow the reversal of the judgment which we are about to order.

The second objection by appellant brings up a new and important point. The doctrine of balancing of relative hardships historically has been applied in appropriate cases by denying to a plaintiff a removal of an encroachment upon his land but allowing him damages where the encroachment does not irreparably injure the plaintiff, was innocently made and where the cost of removal would be great compared to the inconvenience caused plaintiff by the continuance of the encroachment. (*Brown Derby Hollywood Corp.*

v. *Hatton,* 61 Cal.2d 855, 858 [40 Cal.Rptr. 848, 395 P.2d 896]; *Christensen* v. *Tucker,* 114 Cal.App.2d 554, 559 [250 P.2d 660]; see *Dolske* v. *Gormley,* 58 Cal.2d 513 [25 Cal.Rptr. 270, 375 P.2d 174]; *D'Andrea* v. *Pringle,* 243 Cal.App.2d 689 [52 Cal.Rptr. 606]; *Pahl* v. *Ribero,* 193 Cal.App.2d 154 [14 Cal.Rptr. 174]; *Baglione* v. *Leue,* 160 Cal.App.2d 731 [325 P.2d 471].) The rule has been recognized as giving to a private person, in practical effect, and in certain circumstances, the rights of eminent domain by permitting him to occupy property owned by another. (*Christensen* v. *Tucker, supra,* at p. 560.)

Subsequent to the trial in our case, there came the decision in *Miller* v. *Johnston,* 270 Cal.App.2d 289 [75 Cal.Rptr. 699], which sustained a judgment which imposed an easement for the benefit of the *plaintiffs* over a parcel about 50 square feet in area, upon compensation to defendants, for ingress to plaintiffs' garage where it was impractical to drive a vehicle without the easement. The case, however, is substantially different from ours because there had long been an easement over the parcel which had been reduced to a license by agreement. Plaintiffs had continued to drive across the small parcel; there was no change in its physical features. ▮ The case before us is one of building a new improvement to connect with a settled right of way.

But we believe that the equitable doctrine may apply. The new construction was carried on in good faith. Donnell believed that the railroad land, upon which he had a right of way, was coterminous with Road F on which he had a similar right. Bisso had written him, not asserting that there was a land gap belonging to Bisso but demanding that Donnell stop using part of Road F which Donnell had a right to use. In fact, Bisso did not have the survey which indicated that there was an encroachment at the time his original answer to the complaint was filed.

The encroachment is minimal. It is on unusable land. One is reminded of the words of the army officer in Hamlet:

"We go to gain a little patch of ground

That hath in it no profit but the name.

To pay five ducats, five, I would not farm it."

The encroachment ties in with a long established and unquestioned easement, Road F.

Although title to land is to be respected, it is not without limitation. Easements of necessity have long been recognized. (*Reese* v. *Borghi,* 216 Cal.App.2d 324 [30 Cal.Rptr. 688].) There is not such an easement here, but one which equity may fairly create. Facility of transportation enhances

the productivity and worth of lands and of the fruits of the earth. In modern living, rigidity of ownership of every vestige of land must yield somewhat to the welfare of neighbors and of the public. Long since has the concept of ownership to the sky which was a common law notion ("cujus est solum ejus usque ad coelum") given way to the demands of the airplane. So, in lesser manner, it is proper to give a fair, though prudent employment of the equitable doctrine even in favor of a plaintiff and even though his mistaken and harmless encroachment be of recent origin.

■ But Bisso does have a legitimate protest which he made known on motion for new trial, which he has reiterated on appeal, and to which we have seen no reply. In return for the enforced easement, the court purported to make available for Bisso the use of the valuable new road. But since this road was built largely on land owned by Smith (against whom Bisso was litigating other matters) and Smith would not be bound by the judgment, the intended counterbalance may be frustrated. The whole matter should be examined by the trial judge, who may take new evidence and, if the easement and injunction are granted, assure himself that an appropriate counterbalance is effected. (See *Brown Derby Hollywood Corp.* v. *Hatton, supra,* 61 Cal.2d at p. 860.)

■ The judgment is modified by reducing the compensatory damages to the sum of $651.60; it is affirmed as to punitive damages in the sum of $5,000; it is reversed and remanded in respect of the easement and injunction. Each party will bear his own costs on appeal.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied August 25, 1970, and appellants' petition for a hearing by the Supreme Court was denied September 24, 1970.