[L. A. No. 31740. Mar. 5, 1984.]

ERNEST E. WARSAW et al., Plaintiffs and Respondents, v.
CHICAGO METALLIC CEILINGS, INC., Defendant and Appellant.

**COUNSEL**

Gibson, Dunn & Crutcher, Richard G. Duncan, Jr., Larry C. Boyd, Christopher L. Cella and John J. Waller for Defendant and Appellant.

David S. Smith and Lee S. Smith for Plaintiff and Respondent.

**OPINION**

**RICHARDSON, J.**—We granted a hearing in this case to consider whether one who acquires a valid prescriptive easement over another's property nonetheless may be required to compensate that person for either (1) the fair market value of the easement, or (2) the cost of removing or relocating any encroaching structures which interfere with use of the easement. We conclude that the statutes which define and validate prescriptive easements neither authorize nor contemplate an award to the underlying property owner of compensation for the reasonable value of the easement, and that under

the circumstances in this case it would be improper to charge the owner of the easement with any portion of the cost of removing encroachments.

Although we disagree with the Court of Appeal's resolution of the foregoing issues, its opinion (per Compton, J.) correctly determined the other issues on appeal from the trial court's judgment declaring that plaintiffs had acquired a prescriptive easement over defendant's property. Accordingly, we adopt that portion of the opinion as follows:*

This is an appeal from an equitable decree which declared that plaintiffs had acquired an easement by prescription over the property of defendant. Defendant was ordered to dismantle and relocate a structure which had been erected on its own property but which interfered with plaintiffs' use of the easement. [ ]

This action involves two contiguous parcels of real estate which front on [the west side of] Downey Road in the City of Vernon. Downey Road runs in a generally north-south direction. The two parcels are approximately 650 feet deep. Plaintiffs own the southerly parcel and defendant owns the northerly parcel. Both parcels were acquired in 1972 from a common owner.

At the time of acquisition both parcels were unimproved. Plaintiffs' arrangement with the seller was that the seller would construct on the parcel to be purchased by plaintiffs a large commercial building erected to plaintiffs' requirements. The building covered almost the entire parcel. A 40-foot wide paved driveway was laid out along the northern edge of plaintiffs' property to provide access to loading docks on the northern side of plaintiffs' building.

For its part defendant constructed on its property a substantially smaller building which ran only about one-half the depth of the northerly parcel and left vacant a strip of ground about 150 feet wide along the side of the parcel which abutted plaintiffs' property.

From the beginning it was apparent that plaintiffs' 40-foot wide driveway was inadequate since the large trucks which carried material to and from plaintiffs' loading dock could not turn and position themselves at these docks without traveling onto the defendant's property. The inability of these trucks to make such use of defendant's property would destroy the commercial value of plaintiffs' building.

---

*Brackets together, in this manner [ ], are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than the editor's parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. (*Estate of McDill* (1975) 14 Cal.3d 831, 834 [122 Cal.Rptr. 754, 537 P.2d 874].)

The court found that because of the fact that the possibility of creating an easement over defendant's property was considered and rejected in the original negotiations between the seller, plaintiffs and defendant, no easement by implication was created. The trial court further found that the existence of the driveway on plaintiffs' property militated against the creation of an easement by necessity.

From 1972 until 1979 trucks and other vehicles servicing plaintiffs' facility used a portion of the vacant ground on defendant's property to enter, turn, park and leave the area of plaintiffs' loading dock. On at least two occasions during that period plaintiffs sought, unsuccessfully, to acquire an easement from defendant or to create mutual easements over plaintiffs' and defendant's property.

In 1979 defendant developed plans to construct a warehouse on the southerly portion of the property including that portion of the property being used by plaintiffs. A pad of earth was raised along the southerly portion of defendant's property approximately five feet from the property line. This grading effectively blocked plaintiffs' use of the area and plaintiffs commenced this action for injunctive and declaratory relief.

When the trial court denied plaintiffs' request for a preliminary injunction to prevent further construction, defendant proceeded to erect a building on the contested area.

After a trial on the merits, the trial court found that plaintiffs had acquired a 25-foot wide prescriptive easement over and along the southern portion of defendant's property for the full depth of the property. As noted defendant was ordered to remove that portion of the building which interfered with the described easement. Further the trial court gave defendant 90 days to accomplish the removal and purported to reserve jurisdiction to award damages for failure of defendant to comply with the mandatory injunction. This appeal ensued.

■■ The elements necessary to establish a prescriptive easement are well settled. The party claiming such an easement must show use of the property which has been open, notorious, continuous and adverse for an uninterrupted period of five years. (*Gas & E. Co.* v. *Crockett L. & C. Co.* (1924) 70 Cal.App. 283, 290 [233 P. 370]; *Zimmer* v. *Dykstra* (1974) 39 Cal.App.3d 422, 430 [114 Cal.Rptr. 380]; Code Civ. Proc., § 321.) ■■ Whether the elements of prescription are established is a question of fact for the trial court (*O'Banion* v. *Borba* (1948) 32 Cal.2d 145 [195 P.2d 10]), and the findings of the court will not be disturbed where there is substantial evidence to support them.

Further, the existence of a prescriptive easement must be shown by a definite and certain line of travel for the statutory period. (*Dooling* v. *Dabel* (1947) 82 Cal.App.2d 417 [186 P.2d 183].) "The line of travel over a roadway which is claimed by prescription may not be a shifting course, but must be certain and definite. Slight deviations from the accustomed route will not defeat an easement, but substantial changes which break the continuity of the course of travel will destroy the claim to prescriptive rights . . . . [Citations.] [M]anifestly the distance to which a roadway may be changed without destroying an easement will be determined somewhat by the character of the land over which it passes, together with the value, improvements, and purposes to which the land is adapted." (*Matthiessen* v. *Grand* (1928) 92 Cal.App. 504, 510 [268 P.675].)

The trial court found that "the truckers using [the disputed parcel] did, in fact, follow a definite course and pattern, and while admittedly, no two truck drivers followed the exact course . . . and the traffic situation . . . varied from day to day, the deviation taken by various drivers over the seven-year period was only slight."

The evidence revealed that truck drivers who were making deliveries to or receiving goods from plaintiffs used the parcel to approach the building, swing around and back into plaintiffs' loading dock. Since the drivers varied in their abilities, the space required to complete this manuever was variable. No two drivers followed precisely the same course, but all used the parcel for the same purpose—to turn their vehicles so they could enter plaintiffs' loading docks. There was substantial evidence to support the findings on this issue.

Defendant contends that there was no evidence supporting use of several hundred feet of the westerly portion of the parcel. From the trial transcript, it is difficult to discern exactly to which portion of the parcel specific bits of testimony pertain. [ ] [Our review of the record, however, discloses substantial evidence supporting the establishment of a prescriptive easement over the westerly portion at issue.]

Defendant contends that there was no substantial evidence that plaintiffs' use of the property was hostile rather than permissive. Again, we find that this contention is without merit.

The issue as to which party has the burden of proving adverse or permissive use has been the subject of much debate. However, [ ] [we agree with the view, supported by numerous authorities,] that continuous use of an easement over a long period of time without the landowner's interference is presumptive evidence of its existence and in the absence of evidence of

mere permissive use it will be sufficient to sustain a judgment. (*MacDonald Properties, Inc.* v. *Bel-Air Country Club* (1977) 72 Cal.App.3d 693, 702 and cases cited [140 Cal.Rptr. 367].)

■ Defendant relies on evidence that plaintiffs at one time attempted to purchase the disputed parcel from the seller and at various times attempted to negotiate for an express easement. [¶] ■ Whether the use is hostile or is merely a matter of neighborly accommodation, however, is a question of fact to be determined in light of the surrounding circumstances and the relationship between the parties. (*Taormino* v. *Denny* (1970) 1 Cal.3d 679 [83 Cal.Rptr. 359, 463 P.2d 711]; *Fobbs* v. *Smith* (1962) 202 Cal.App.2d 209 [20 Cal.Rptr. 545].)

■ There was evidence adduced at trial that despite plaintiffs' unsuccessful attempts to negotiate an express easement, their use of the property continued uninterrupted for approximately seven years. There was no evidence that defendant had ever expressly permitted plaintiffs to use the parcel for truck and vehicular traffic. In fact defendant's adamant refusal to negotiate on the issue is evidence that no permission was given or contemplated.

■ Defendant's next assignment of error is addressed to the trial court's order to remove that part of the completed structure which interferes with plaintiffs' easement. Defendant argues that a mandatory injunction may not issue to enjoin a completed act. However, there is extensive authority standing for the proposition that a court of equity may, in a proper case, issue a mandatory injunction for protection and preservation of an easement including, where appropriate, an order for removal of an obstruction already erected. (*Clough* v. *W. H. Healy Co.* (1921) 53 Cal.App. 397 [200 P. 378]; *Pacific Gas & Elec. Co.* v. *Minnette* (1953) 115 Cal.App.2d 698 [252 P.2d 642].) The determination as to whether such remedy is appropriate is within the sound discretion of the trial court. (*Pacific Gas & Elec. Co.* v. *Minnette, supra.*) A mandatory injunction may issue even if the cost of removal is great under certain circumstances [, especially if the encroaching structure was wilfully erected with knowledge of the claimed easement. (See *Brown Derby Hollywood Corp.* v. *Hutton* (1964) 61 Cal.2d 855, 859 [40 Cal.Rptr. 848, 395 P.2d 896]; *Dolske* v. *Gormley* (1962) 58 Cal.2d 513, 521 [25 Cal.Rptr. 270, 375 P.2d 174]; *Raab* v. *Casper* (1975) 51 Cal.App.3d 866, 873 [124 Cal.Rptr. 590]; *D'Andrea* v. *Pringle* (1966) 243 Cal.App.2d 689, 698 [52 Cal.Rptr. 606]; *Pacific Gas & Elec. Co.* v. *Minnette, supra,* 115 Cal.App.2d at p. 710; *Christensen* v. *Tucker* (1952) 114 Cal.App.2d 554, 563-564 [250 P.2d 660]; *Morgan* v. *Veach* (1943) 59 Cal.App.2d 682, at p. 689 [139 P.2d 976].)

As the court in *Morgan* explained:] "An appropriate statement relative to defendants' assertion that an injunction would work an inequitable burden is in 28 Am.Jur., section 56, page 253 as follows: 'In view of the drastic character of mandatory injunctions, the rule under consideration as to balancing the relative conveniences of the parties applies with special force to a prayer for such mandatory relief. Where, therefore, by innocent mistake or oversight, buildings erected . . . slightly encroach . . . and the damage to the owner of the buildings by their removal would be greatly disproportionate to the injury . . . the court may decline to order their removal . . . . But relief by way of a mandatory injunction will not be denied on the ground that the loss caused by it will be disproportionate to the good accomplished, where it appears that the defendant acted with a full knowledge of the complainant's rights and with an understanding of the consequences which might ensue . . . .'

"In a note in 57 A.L.R., first column, page 343, it was said: 'Wilfulness on the part of the defendant in proceeding with the violation of the restriction after warning by the complainant, especially after suit is brought, is a ground for equitable relief by mandatory injunction greatly stressed by the courts.'" (P. 689.)

■ In the case at bench, the structure to be removed was not begun until after the underlying action was filed. It was completed while the litigation was still pending. Defendant gambled on the outcome of the action and lost. The fact that its decision may have been reasonable in light of the denial of the preliminary injunction does not change the result.

■ [ ] [Defendant next challenges the trial court's] retention of jurisdiction to award damages in the event of defendant's noncompliance with the mandatory injunction within 90 days of judgment. Defendant argues that this portion of the judgment interferes with its right to an automatic stay of the injunction on appeal. (*Byington* v. *Superior Court* (1939) 14 Cal.2d 68, 70 [92 P.2d 896].)

Code of Civil Procedure section 916, subdivision (a), provides: "Except as provided in Sections 917.1 through 917.9 and in Section 117.7, the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, *including enforcement of the judgment or order,* but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." (Italics added.)

The order reserving jurisdiction was made by the court in apparent recognition of the fact that plaintiffs continued to suffer damages every day that

use of the easement was obstructed. If defendant's contentions had been upheld on appeal, there would of course have been no basis for an award of damages. Hence the judgment was not enforceable during the pendency of the appeal.

On the other hand, a stay in the enforcement of the judgment during the pendency of the appeal does not a fortiori prevent the accrual of the damages which become part of the judgment if and when the judgment becomes final and enforceable. [ ] [The trial court's retention of jurisdiction for the possible awarding of damages thus was appropriate under the circumstances of this case.] (End of Court of Appeal opinion.)

■■■ We next consider whether defendant is entitled to any offsetting monetary relief from plaintiffs. Defendant contends that the trial court's judgment is overly harsh because it both granted plaintiffs an easement over a 16,250-square-foot parcel of defendant's property free of charge and also required defendant to incur the entire cost of relocating or reconstructing its building. Would application of equitable principles dictate that plaintiffs either pay to defendant the fair market value of the easement they acquired, or contribute a portion of the costs of relocating? We think not.

■■■ Initially, the statutory procedure for acquiring an easement by prescription quite clearly retains the traditional common law rule that such an easement may be obtained without incurring any liability to the underlying property owner. Civil Code section 1007, enacted in 1872, provides that "Occupancy for the period prescribed by the Code of Civil Procedure as sufficient to bar any action for the recovery of the property *confers a title thereto,* denominated a title by prescription, *which is sufficient against all* . . . ." (Italics added.) We have confirmed that if the requisite elements of a prescriptive use are shown, "Such use for the five-year statutory period of Code of Civil Procedure section 321 *confers a title by prescription."* (*Taormino* v. *Denny, supra,* 1 Cal.3d at p. 686, fns. omitted, italics added.)

■■■ Thus, plaintiffs herein have acquired a title by prescription which is "sufficient against all," including defendant. That being so, there is no basis in law or equity for requiring them to compensate defendant for the fair market value of the easement so acquired. To exact such a charge would entirely defeat the legitimate policies underlying the doctrines of adverse possession and prescription " 'to reduce litigation and preserve the peace by *protecting* a possession that has been maintained for a statutorily deemed sufficient period of time.' " (Italics added, *Gilardi* v. *Hallam* (1981) 30 Cal.3d 317, 324 [178 Cal.Rptr. 624, 636 P.2d 588], quoting from an earlier case; see also Rest., Property, intro. note at pp. 2922-2923; 3 Powell, The Law of Real Property (1981 ed.) ¶ 413, pp. 34-103—34-104.) As described

by Professor Powell, "Historically, prescription has had the theoretical basis of a lost grant. Its continuance has been justified because of its functional utility in helping to cause prompt termination of controversies before the possible loss of evidence and in *stabilizing* long continued property uses." (*Ibid.*, fn. omitted, italics added.) If the doctrine of prescription is truly aimed at "protecting" and "stabilizing" a long and continuous use or possession as against the claims of an alleged "owner" of the property, then the latter's claim for damages or fair compensation for an alleged "taking" must be rejected.

The Court of Appeal recently described the rationale underlying the related adverse possession doctrine as follows: "[I]ts underlying philosophy is basically that land use has historically been favored over disuse, and that therefore he who uses land is preferred in the law to he who does not, even though the latter is the rightful owner. [Fn. omitted.] Hence our laws of real property have sanctioned certain types of otherwise unlawful taking of land belonging to someone else, while, at the same time, our laws with respect to other types of property have generally taken a contrary course. This is now largely justified on the theory that the intent is not to reward the taker or punish the person dispossessed, but to reduce litigation and preserve the peace by protecting a possession that has been maintained for a statutorily deemed sufficient period of time . . . . [¶] Quite naturally, however, dispossessing a person of his property is not easy under this theory, and it may even be asked whether the concept of adverse possession is as viable as it once was, or whether the concept always squares with modern ideals in a sophisticated, congested, peaceful society . . . . [¶] *Yet this method of obtaining land remains on the books,* and if a party proves all five of the [requisite] elements [citation], he can claim title to another's land . . . ." (*Finley* v. *Yuba County Water Dist.* (1979) 99 Cal.App.3d 691, 696-697 [160 Cal.Rptr. 423], italics added.)

Similarly, the system of acquiring an interest in land by prescription "remains on the books," and any decision to alter that system by requiring the payment of compensation clearly would be a matter for the Legislature. Defendant cites no authorities indicating that the present system is unconstitutional in any respect.

■ Assuming that an award of compensation for the value of the easement is unavailable, may the courts nonetheless order the easement owner to contribute all or part of the cost of relocating or reconstructing an encroaching building? It is at least arguable that a court of equity could order, in an appropriate case, that the plaintiff contribute a portion of the cost of relocating an *innocent* encroachment, as a condition to an award of injunctive relief. As previously noted, it is well established that a court has dis-

cretion to balance the hardships and *deny* removal of an encroachment if it was innocently made and does not irreparably injure the plaintiff, and where the cost of removal would greatly exceed the inconvenience to the plaintiff by its continuance. (See *Brown Derby Hollywood Corp.* v. *Hatton, supra,* 61 Cal.2d at p. 858; *Dolske* v. *Gormley, supra,* 58 Cal.2d at pp. 520-521; *Raab* v. *Casper, supra,* 51 Cal.App.2d at p. 872; *Donnell* v. *Bisso Brothers* (1970) 10 Cal.App.3d 38, 45 [88 Cal.Rptr. 645].) If, as the foregoing cases establish, an outright denial of injunctive relief would be sustained under those circumstances, then no compelling reason exists for depriving the trial court of the *lesser* power of granting the injunction on condition that the plaintiff pay a reasonable portion of the cost of relocation. (See *Collester* v. *Oftedahl* (1941) 48 Cal.App.2d 756, 760-761 [120 P.2d 710] [injunctive relief conditioned upon payment of costs]; cf. *Farmers Ins. Exch.* v. *Ruiz* (1967) 250 Cal.App.2d 741, 747-748 [59 Cal.Rptr. 13]; 2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 82, at p. 1520; 2 Pomeroy's Equity Jurisprudence (5th ed. 1941) § 385 et seq. ["He who seeks equity must do equity"].)

In the present case, however, it is apparent that it would be inequitable to charge plaintiffs, who lawfully perfected an easement by prescription, for the cost of removing an encroaching structure erected by defendant with prior notice of plaintiffs' claim. As previously noted, defendant's building was erected *after* plaintiffs' suit was filed and remained pending. Under similar circumstances, the courts have deemed an encroachment to be wilful and have ordered its removal despite a disproportionate hardship to the defendant. Likewise, plaintiffs should not be required to contribute to the cost of relocating encroaching structures which were erected by defendant with full knowledge of plaintiffs' claim.

The judgment is affirmed.

Mosk, J., Kaus, J., and Broussard, J., concurred.

**GRODIN, J.,** Concurring.—I cannot accept the majority's attempted justification for the current law of prescriptive easements. How, in today's urban society, litigation is reduced or the peace is preserved by allowing persons situated as are these plaintiffs to acquire rights in what is concededly the land of another without a cent of payment is beyond my comprehension. I therefore agree entirely with the policy criticisms contained in Justice Reynoso's dissenting opinion.

I am persuaded, however, that if change is to come to this arcane area of the law it should come through the Legislature rather than through the courts. It is not alone the existence of Civil Code section 1007 which per-

suades me, for as my dissenting colleague observes that section, adopted in 1872, was early interpreted as merely fixing the time within which a right by prescription may be acquired. But, in 1965 the Legislature modified the harsh application of the prescriptive easement doctrine by adding Civil Code section 1008, which permits a property owner to avoid acquisition of an easement by the simple expedient of posting a sign.[1] Given that modification, and that degree of legislative attention, I would leave the next move to Sacramento. I therefore join in affirming the trial court's judgment.

Bird, C. J., concurred.

**REYNOSO, J.**—I respectfully dissent from that portion of the majority opinion which denies compensation of fair market value for the easement.

A. *Fair Market Value*

Plaintiffs called upon the power of the trial court, acting in equity, to declare and protect a prescriptive easement. The court agreed. Yet the practical result, as indicated by the Court of Appeal opinion (per Compton, J.), is that: "A simple affirmance of the judgment would result in plaintiffs, who are admittedly trespassers, acquiring practical possession of a sixteen thousand two hundred fifty (16,250) square foot parcel of defendant's valuable property free of charge . . . ."

The majority argues that the result, unjust or not, is ordained by statute. I disagree. My review of the statutes cited by the majority convinces me that they have not removed from the courts the traditional power to invoke the equitable doctrines which deal with fairness. Those doctrines persuade me that plaintiffs should pay fair market value for the property interest acquired.

1. *Statutory Scheme*

The law of prescriptive easements and their enforcement enjoyed a long history at common law before 1872. In that year Civil Code section 1007 was enacted. It merely codified the general concept of prescriptive easement

---

[1] Civil Code section 1008 provides: "No use by any persons or persons, no matter how long continued, of any land, shall ever ripen into an easement by prescription, if the owner of such property posts at each entrance to the property or at intervals of not more than 200 feet along the boundary a sign reading substantially as follows: 'Right to pass by permission, and subject to control, of owner: Section 1008, Civil Code.'"

found at common law.[1] We must look, therefore, to common law precepts to resolve the issue at hand.

At common law, the declaration of whether a prescriptive easement existed was considered an action at law.[2] It remains so. (2 Defuniak, Handbook of Modern Equity (1956) § 31, pp. 55-56, hereinafter Defuniak.) However, the protection of the declared right was generally considered, and still is, an action in equity. (Walsh on Equity (1930) § 35, p. 184; hereinafter Walsh; Defuniak, § 31, p. 56.)

Mere citation to Civil Code section 1007 resolves nothing. The term "title by prescription," for example, describes the rights which a person acquires upon establishing a prescriptive easement. Nothing more. The case at bench assumes acquisition; the real issue deals with the conditions which the court may impose to protect that judicially declared easement. Thus, in *Taormino* v. *Denny* (1970) 1 Cal.3d 679 [83 Cal.Rptr. 359, 463 P.2d 711], cited by the majority, our court did no more than affirm the prescriptive right over a private roadway. (See also *Niles* v. *City of Los Angeles* (1899) 125 Cal. 572 [58 P. 190]; *Clarke* v. *Clarke* (1901) 133 Cal. 667 [66 P. 10].) Not surprisingly, the parties have not cited the section before the trial court, the appellate court, or before us. Neither the trial court nor the Court of Appeal mentioned it. And no papers before us mention the code section. Yet, the section erroneously forms the basis for the majority opinion.

### 2. *The Power of the Court Acting in Equity*

The Court of Appeal correctly identified the nature of plaintiff's cause of action and the issue in this appeal when it wrote: "This is an appeal from an *equitable decree* which declared that plaintiffs had acquired an easement by prescription over the property of defendant." (Italics added.) Neither the parties nor the majority disagree with that characterization.

We come, therefore, to the power of the court in equity. Whether the trial court must order the plaintiffs to pay fair market value for the prescrip-

---

[1] Our 1872 codification generally followed the 1865 New York codification. (See 1 Powell, The Law of Real Property (1981 ed.) ¶ 83, p. 307.) New York, like California, recognized the applicability of the common law. (Generally, see *id.*, at ¶ 59, p. 186.) Indeed, California had already incorporated the common law of England, if not in conflict with constitutional or statutory provisions, as it existed in 1850. (See Civ. Code, § 22.2 [formerly Pol. Code, § 4468]; *Martin* v. *Superior Court* (1917) 176 Cal. 289 [168 P. 135]; McMurray, *Seventy-five Years of California Jurisprudence* (1925) 13 Cal. L.Rev. 445.)

[2] In *Clarke* v. *Clarke* (1901) 133 Cal. 667, 669 [66 P. 10], we find this description: "Prescription, at common law, was a mode of acquiring title to incorporeal hereditaments by immemorial or long-continued enjoyment. It had its origin in a grant evidenced by usage, and was allowed on account of its loss, either actual or supposed, and for this reason only those things could be prescribed for which could be created by grant. The presumption of the grant of an easement in the lands or over the lands of another is sometimes indulged."

tive easement, as the Court of Appeal concluded, depends on the breadth of discretion which the court in equity enjoys. Let us briefly explore the concept of equity.

Equity's origins lie in the King's extraordinary judicial power, exercised through the Chancery, to administer justice whenever "it was probable that a fair trial in the ordinary Courts would be impeded, and also whenever, . . . the regular administration of justice was hindered. (5 Pomeroy's Equity Jurisprudence (1941) § 31 p. 37, hereinafter Pomeroy.) The Chancellor was obliged to look only to "Honesty, Equity, and Conscience [ ]" to decide conflicts. (*Id.*, § 35, p. 40.) Today, it is only a matter of degree that separates the early Chancellors who decided "whether reason and conscience demanded special intervention. . . ." (Walsh, § 53, p. 282) from the modern judges and their grants of equitable relief. (*Id.*) The modern judge remains the repositor of special relief; he stands in the states' stead "modifying the rigor of hard and fast rules at law where reason and conscience demand it." (*Ibid.*)

What would be fair under the circumstances of the case at bench? The problem began because plaintiff built a large commercial building without leaving sufficient room for delivery trucks to approach the loading docks. The building which defendant had built left a 150-foot wide strip of unimproved land. The 40-foot wide driveway plaintiffs had constructed was simply insufficient for its purposes. Therefore, the delivery trucks went on to defendant's land. In the original negotiations the creation of an easement was considered by the seller, plaintiffs and defendant, but none was negotiated. Later, plaintiffs offered to purchase an easement at least twice. Finally, when defendant raised a dirt pad of land on his land (apparently in preparation for the construction) which prevented the trucks from trespassing more than five feet, plaintiffs brought this action.

Traditionally the courts have not imposed a condition that fair market value be paid before a prescriptive easement will be declared and protected. However, in my view, the courts do have such power. In the case at bench that power should be exercised.

The role which the court in equity can play is seen in two disparate examples, one old and one new. First, we look to the traditional case wherein the building of one owner trespasses upon that of another. Where the law recognizes a legal wrong in such a trespass, and would normally order the removal of the encroaching building (as was done in the case at bench), the court in equity may instead order that money damages be paid by the encroaching party as a condition of protecting the encroachment, particularly where the encroachment was unintentional. (See Walsh, § 55, pp. 284-85.)

Second, I cite a quite different example which does not deal with property. The courts, pursuant to their inherent equitable powers, have created several exceptions to the statutory rule (Code Civ. Proc., § 1021) which requires each party to pay his or her own attorney fees. (See *Serrano* v. *Priest* (1977) 20 Cal.3d 25, 34-47 [141 Cal.Rptr. 315, 569 P.2d 1303].) These examples simply illustrate the not too startling notion that courts of equity, in search of fairness, may (1) impose conditions before a decree protecting rights will issue, (2) grant monetary damages, and (3) extend statutory rights. I cite these only to stress that no reason abides in the history, concept or modern practice of equity which would so restrict the power of the court that it could not impose a requirement that fair market value be paid by the trespasser who is granted a prescriptive easement.

Finally, I turn to the fairness issue. By permitting the prescriptive easement in the case at bench the state, acting through the court, endorses a private action akin to eminent domain. Practically,[3] it is the taking of property rights from defendant and giving them to plaintiff. Can it be fair to reward a wrongdoer and punish an innocent property owner?

The majority says "yes." It is fair, according to the majority, for several reasons including (1) reducing litigation, (2) protecting possession, and (3) preference for use over disuse of land. None of these reasons is convincing. First, no litigation was reduced. Society should not be in the business of forcing an owner of land to bring suit when a trespass has occurred. Such a policy increases litigation. Second, the possession of the easement has in fact been protected; plaintiffs are only required to pay for the easement. Third, modern society evidences a preference for planned use, not the ad hoc use of a trespasser. It is questionable that in the urban setting of the case at bench, such use by the trespasser is preferred by society.

I do not rely solely on my personal view of fairness. Rather, it is my role as a judge, as it was with the chancellor, to apply a "conception of justice in accordance with the prevailing reason and conscience of the time." (Walsh, § 53, p. 281.) (See also 5 Pomeroy, Equity Jurisprudence, § 67, p. 89; "[Equity] is so constructed . . ., that it possesses an inherent capacity of expansion, so as to keep abreast of each succeeding generation and age.") The final decree of the trial court, approved by the majority, contravenes today's basic notions of fairness and justice. A requirement that plaintiffs pay fair market value for the land use given them is the least our society expects.

---

[3]The fiction that a lost "title" is newly found by the trespasser and that therefore he or she has a title sufficient as to all flies in the face of reality. The facts in the case at bench cannot accommodate that fiction.

## B. *Disposition*

The suggestion of the concurring opinion that the Legislature should study this area of law bears underscoring. The statutes need to reflect today's realities. Certainly—they should at least ameliorate the harsh consequences the majority feels compelled to enforce. However, I note that the recent legislative changes referred to in the concurrence only provide a landowner relief from the *creation* of a prescriptive easement. There remains the need for an equitable avenue by which the courts may relieve a landowner subject to a prescriptive easement of an otherwise inequitable burden.

I would affirm the judgment. However, I would remand to the trial court for further proceedings to fix an amount of reasonable compensation to be paid by plaintiffs to defendant. That compensation would be the fair market value of the property interest acquired. From that compensation damages, if any, sustained by plaintiff should be subtracted.