Filed 8/14/14  Armijo v. Mason CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| OSCAR ARMIJO et al., | |
| Plaintiffs and Appellants, | E055460 |
| v. | (Super.Ct.No. INC086617) |
| JOHN MASON III et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  John G. Evans, Judge.

Affirmed.

Oscar Armijo, Luisa Armijo, Nicholas Minervini, and Joan Elaine Minervini,

plaintiffs in pro. per.; Law Office of Raymond Buendia and Raymond Buendia for

Plaintiffs and Appellants.

Law Offices of Robert B. Mobasseri and Robert B. Mobasseri for Defendants

and Respondents.

Plaintiffs and appellants Oscar Armijo, Luisa Armijo (collectively, the Armijos), Nicholas Minervini, and Joan Elaine Minervini (collectively, the Minervinis) sued their neighbors, defendants and respondents John Mason III and Glenys Sarah Weems (collectively, the Masons).[1]  The Armijos and Minervinis (collectively, plaintiffs) sought (1) to quiet title to a parcel of property (Parcel-1), which was part of the Masons' property, but which plaintiffs had been using for a period of years; (2) declaratory relief reflecting plaintiffs had a prescriptive easement to park cars and place trashcans on Parcel-1; and (3) an injunction requiring the Masons to let plaintiffs use Parcel-1, which would include removal of a block wall.

After a bench trial, the trial court ruled that plaintiffs could use Parcel-1 "for the purpose of trash collection as an incident of the right of ingress and egress," but in all other respects, ruled in favor of the Masons.  Plaintiffs raise two issues on appeal.  First, plaintiffs assert their evidence supports a finding of a prescriptive easement.  Second, plaintiffs contend the Masons should be required to remove the block wall.  We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

The following is a representation of the area in dispute, with the arrows representing the approximate location of the driveways, and the circles representing the approximate location of the garages:

---

[1] We use "the Masons" for ease of reference.  No disrespect is intended toward Ms. Weems.



Parcel-1 measures 40 feet by 80 feet. Part of Parcel-1 is gravel, and part of it is asphalt. After a tax default and sale, the Coachella Valley Water District owned Parcel-1. In 1991, the Water District transferred ownership of Parcel-1 to the then-owner of the Masons' property. The 1991 deed for Parcel-1 reflected the following reservations: "RESERVING to the grantor pipeline easements for construction, operation and maintenance of present and future lines. [¶] ALSO RESERVING to the grantor and all adjacent property owners an access easement for ingress and egress."

A private civil engineer Dale Walters (Walters) testified on behalf of plaintiffs. After reviewing various documents such as deeds, Walters believed Parcel-1 was intended, in the past, to be used as a road. Walters did not find any documents dedicating Parcel-1 as a private road or public road. Walters's opinion was "based on

[the] phraseology in the document"; presumably "the document" is the 1991 deed transferring ownership from the Water District.

The Armijos moved into their home at 74-611 Yucca Tree Drive, in Palm Desert, in July 1988. The Armijos' have four children who are now grown. The pool-parcel, in the drawing *ante*, is now owned by the Armijos; however, when the Armijos' children were younger, four neighbors, including the Armijos, shared a 25 percent ownership interest in the pool-parcel. Over time, the Armijos purchased the other neighbors' ownership interests, so the Armijos now owned the pool-parcel.

The Minervinis moved into their home, at 74-653 Yucca Tree Drive, in 1996. The Masons moved into their home, at 74-645 Yucca Tree Drive, in 2007. The Masons own Parcel-1, which is encumbered by the ingress/egress easement for adjacent property owners.

The area in the drawing above marked as "Parcel-2" is owned by the Armijos. The Armijos parked vehicles on Parcel-2. The Masons constructed a block wall on the Masons' residential property, along Parcel-2. In other words, the wall is along the Masons' house-property and Parcel-2. Prior to the wall being constructed, the Armijos would drive across a corner of the Masons' property to access a driveway for Parcel-2 and then park their vehicles on Parcel-2. The block wall starts at the back of the Masons' property. It is unclear where the block wall ends, but it can be inferred from

4

the testimony that the wall extends over and beyond the driveway the Armijos had used to access Parcel-2 when cutting across the corner of the Masons' property.[2]

Parcel-2 has trees and tree stumps on it, but the area near the Parcel-2 driveway, (the driveway that requires cutting across a corner of the Masons' property) was relatively free of trees and stumps. Effectively, the Masons blocked the tree-free Parcel-2 driveway, forcing the Armijos to access Parcel-2 from Parcel-1. When the Armijos enter Parcel-2 from Parcel-1, it is "very difficult" for the Armijos to fit their van between the block wall and the trees located on Parcel-2. The Armijos have not tried removing the trees or tree stumps on Parcel-2. The Armijos cannot park the van on Parcel-2 the same way they did prior to the wall being built. Oscar has run over water meters on Parcel-2, breaking the meters, when trying to maneuver the van after the wall was constructed. The Armijos have been parking the various vans they owned on Parcel-2 since 1988.

Also since 1988, the Armijos used Parcel-1 to access their home, to park their cars, for their guests' to park their cars, to place their trashcans, and for maintenance people, such as gardeners, to park their trucks. Luisa Armijo (Luisa) used to maintain Parcel-1 by shoveling gravel and pulling weeds. When Oscar went to look at his

---

[2] It is unclear from the record exactly where the wall ends. During testimony, Oscar was referring to an aerial photograph of the neighborhood and said, "There's now a block wall here. Goes all the way down to the back of the property." Nobody clarified for the record where Oscar was pointing on the exhibit. Oscar was asked to explain specifically where the wall was located, and he responded, "It's—this portion right here and all the way down over here." Again, nobody clarified for the record where Oscar was pointing on the exhibit.

property, in order to purchase it, the then-owner of the Armijos' property told Oscar he could park on Parcel-1.

Approximately five different people have owned the Mason-property since the Armijos purchased their home in 1988. The Armijos never spoke to the four prior owners of the Masons' property about using Parcel-1; although one of the prior owners of the Masons' property (J.R.) offered to sell Parcel-1 to the Armijos, but the Armijos declined the offer.

When the Masons moved into their residence, the Armijos introduced themselves and explained where they lived, who the neighbors were, and the different vehicles the Masons may see parked on Parcel-1. At some point, the Masons gave the Armijos a document notifying the Armijos that the Armijos could not park their cars on Parcel-1, and that the Armijos' use of Parcel-1 was limited to ingress and egress.[3] Luisa explained to Glenys Sarah Weems (Weems) that the Armijos' children "have nowhere else to park."

Nicholas Minervini (Nicholas) has a pool repair and service business. He has two trucks for his business. Nicholas parks one of his trucks on Parcel-1, along his property line. Nicholas has been parking a truck on Parcel-1 since 1996. The Minervinis' guests also parked on Parcel-1. The Minervinis placed their trashcans on

---

[3] It is unclear exactly when the Masons gave the document to the Armijos. A date is not discussed during the testimony. An exhibit number is not discussed during the testimony. An exhibit list is not included in the clerk's transcript. We reviewed the register of actions for exhibit references, but could not find one related to a letter. The trial court's Statement of Decision does not include a date related to the document.

Parcel-1 or on the Armijos' property, because the Armijos' property extends a few feet past their yard, allowing room for trashcans. The Minervinis' gardener occasionally removed weeds on Parcel-1, and the Minervinis helped maintain the Parcel-1 gravel on one occasion. The Minervinis never asked the prior owners of the Masons' property or the Masons for permission to use Parcel-1. When the Minervinis moved into their home, Nicholas saw other people were parking their vehicles on Parcel-1 and "assumed it was—it was just like community parking that's all."

Upon moving into his home, John Mason III (Mason) noticed other people's vehicles parked on Parcel-1. Mason noticed five or six cars at a time parked on Parcel-1. Mason gave the Minervinis and the Armijos the written notice that they could no longer park their vehicles on Parcel-1. Nicholas stopped parking his truck on Parcel-1 for a period after the notice, but returned to parking on Parcel-1 once the lawsuit for the instant case was filed in 2009.

Mason explained that he had the block wall constructed because the area outside their property "was not that pretty," and to increase security. Mason only ever saw the Armijos park a single van on Parcel-2; the Armijos did not park other vehicles there. Mason believed the wall did not prevent the Armijos from parking their van on Parcel-2; it was the trees and stumps that prevented the Armijos from going further onto Parcel-2, but they were still able to park a van on Parcel-2. Mason had a survey conducted for Parcel-1, which reflected the Minervinis' yard encroached on Parcel-1; however, there was nothing reflecting the Minervinis had paid taxes for Parcel-1.

7

Mason had never seen the Armijos or Minervinis perform maintenance work on Parcel-1.

The trial court issued a Statement of Decision. In regard to the quiet title cause of action, the court found there was no evidence supporting a ruling to quiet title as to any portion of Parcel-1. The court concluded plaintiffs' arguments were limited to a prescriptive easement and injunction, which supported the conclusion that there was no evidence reflecting the need to quiet title.

As to the prescriptive easement cause of action, the trial court noted plaintiffs wanted an easement for parking their cars and placing their trashcans. The trial court found the right to park is not incidental to a right of ingress and egress. The court presented the rule that a prescriptive easement requires evidence of hostile use of the property. The court found the evidence reflected the Armijos were told they could park on Parcel-1 when they moved into the neighborhood and no one complained about their use of Parcel-1 until the Masons became the owners of Parcel-1. Additionally, the court found Nicholas never asked for permission to use Parcel-1, he assumed he could use it. Based upon this evidence, the trial court found plaintiffs' use of Parcel-1 (parking and trashcans) was not hostile.

The trial court wrote, "The evidence presented at trial indicates that prior to Mason/Weems acquiring ownership of [Parcel-1], plaintiffs' use of [Parcel-1] was merely the type that is normally allowed by one neighbor to another as a friendly gesture and accommodation. Such use cannot ripen into a prescriptive right." The court held the plaintiffs, along with the future owners of the vacant property, could use

8

Parcel-1 for placement of trashcans for trash pick-up and for temporary parking for service workers, such as pool cleaners and landscapers.

In regard to the block wall, the trial court noted it was unclear if any portion of the block wall was located on Parcel-1 since a survey related to the block wall was not presented at trial. The court noted the Armijos had an easement across Parcel-1, but did not have an easement across the corner of the Masons' property that the Armijos had been using to access Parcel-2. As a result, the court concluded the Armijos failed to meet their burden of proof regarding a prescriptive easement for accessing Parcel-2, e.g., they did not have an easement to drive across the Mason's residential property.

As to the injunction, the trial court found there was no evidence that the Masons use of Parcel-1 should be enjoined. The court concluded nothing indicated the Masons were interfering with the plaintiffs' rights of ingress and egress.

## DISCUSSION

A.    PARCEL-1

Plaintiffs contend the trial court erred because their evidence established a hostile use of Parcel-1.

"The elements necessary to establish a prescriptive easement are well settled. The party claiming such an easement must show use of the property which has been open, notorious, continuous and adverse for an uninterrupted period of five years. [Citations.] Whether the elements of prescription are established is a question of fact for the trial court [citation], and the findings of the court will not be disturbed where

9

there is substantial evidence to support them." (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570.)

Under the substantial evidence standard, """"the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted" to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor . . . .' [Citation.]" (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 935.)

The "hostile" element requires the claimant's use of the property be adverse to the owner, with no permission from the owner being expressed or implied. (*Otay Water Dist. v. Beckwith* (1991) 1 Cal.App.4th 1041, 1045; *Aaron v. Dunham* (2006) 137 Cal.App.4th 1244, 1252.) "Whether the use is hostile or is merely a matter of neighborly accommodation . . . is a question of fact to be determined in light of the surrounding circumstances and the relationship between the parties. [Citations.]" (*Warsaw v. Chicago Metallic Ceilings, Inc.*, *supra*, 35 Cal.3d at p. 572.)

Oscar testified that, when his children were young, he and three of his neighbors each owned a 25 percent interest in the pool-parcel. Neighbors would use Parcel-2 to access the pool-parcel. Luisa testified that she cleaned and maintained Parcel-1 because, when the Armijos' children were young, they would play on Parcel-1. Luisa was one of the only people on the street who did not work, and therefore had time to maintain the lot. Luisa explained, the neighbors "would come and tell [her] thank you" and the neighbors "were grateful" for her help maintaining Parcel-1. When the

10

Minervinis moved into their home, Nicholas saw other people were parking their vehicles on Parcel-1 and "assumed it was—it was just like community parking that's all."

The Armijos both testified that when the Masons moved into the neighborhood, the Armijos went to introduce themselves to the Masons, but only Weems was present, Mason was not part of the conversation. During the conversation, the Armijos explained who they were and the different cars the Masons might see on Parcel-1, e.g., one car belonged to the Armijos' daughter. Luisa said she mentioned the cars because she wanted the Masons "to know who my kids were." Oscar said the cars were mentioned because the Armijos "were just being friendly. We were just being neighbors, normal people talk about those things."

The Armijos' testimony reflects a neighborhood where neighbors were friendly with one another. They owned property together, helped one another with maintenance work, and had friendly relationships. When the Masons moved-in, the Armijos did not tell the Masons, "we claim a right to Parcel-1"; rather, the Armijos had a friendly conversation about the cars the Masons may see on Parcel-1. From the foregoing evidence, the trial court could reasonably conclude the Armijos and Minervinis were using Parcel-1 as part of a neighborly accommodation, since the neighbors had been so friendly and cooperative with one another. Accordingly, we conclude substantial evidence supports the trial court's finding that the use was merely a matter of neighborly accommodation, i.e. permissive use.

11

Plaintiffs assert the evidence does not reflect permissive use because plaintiffs "have made parking use of [Parcel-1] for at least 11 years without the landowner's interference." Plaintiffs rely on the rule that the existence of a prescriptive easement can be presumed by proving (1) open, notorious, visible, and continuous use of a property; and (2) a lack of protest or opposition from the dominant property owner. However, that presumption can be rebutted by evidence of permissive use. (*MacDonald Properties, Inc. v. Bel-Air Country Club* (1977) 72 Cal.App.3d 693, 702.) Plaintiffs' argument ignores (1) the permissive use aspect of the law, and (2) the foregoing evidence of a cooperative and sharing neighborhood. As detailed *ante,* there is evidence reflecting a friendly neighborhood wherein neighbors permissively accommodated and supported one another. The lack of interference does not equate with a lack of substantial evidence. Accordingly, we find plaintiffs' argument to be unpersuasive.

B.    PARCEL-2

Plaintiffs contend the trial court erred by "den[ying] remedy to Appellant Armijo for [the Masons'] blocking of his access to the [Parcel-2] portion of his property." Plaintiffs write, "It is submitted that substantial evidence to support the court's denial of relief under any cause of action does not exist." The argument contains no legal or record citations. Plaintiffs do not explain what evidence is insufficient and/or how it is insufficient. Since plaintiffs do not provide legal citations, record citations, or analysis related to this issue, we deem it to be abandoned. (*Benach v. County of Los Angeles*

12

(2007) 149 Cal.App.4th 836, 852; see also Cal. Rules of Court, rule

8.204(a)(1)(B)&(C).)

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

KING
J.

13