Filed 7/31/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RANCH AT THE FALLS LLC et al., | B283986 |
| Plaintiffs, Cross-defendants and Respondents, | (Los Angeles County Super. Ct. No. PC055790) |
| v. | |
| KEITH O'NEAL et al., | |
| Defendants, Cross-complainants and Appellants; | |
| EAGLE KNIGHT SECURITY SYSTEMS, INC., | |
| Defendant and Appellant; | |
| MURAD M. SIAM, as Trustee, etc., et al., | |
| Movants and Appellants. | |

APPEALS from a judgment and orders of the Superior Court of Los Angeles County. Melvin Sandvig, Judge. Reversed and remanded with directions.

Berding & Weil, Nicholas A. Rogers and Aaron A. Hayes for Defendant and Appellant Indian Springs Homeowners Association, Inc.

Beaumont Tashjian, Lisa A. Tashjian and Tara M. Radley for Defendant and Appellant Eagle Knight Security Systems, Inc. and for Cross-complainant and Appellant Indian Springs Homeowners Association, Inc.

Ferguson Case Orr Paterson, Wendy C. Lascher and John A. Hribar for Defendants, Cross-complainants and Appellants Keith O'Neal and Gladys Maniago.

Garrett & Tully, Ryan C. Squire, Zi C. Lin and Adjoa M. Anim-Appiah for Movants and Appellants.

Cozen O'Connor and Frank Gooch III for Plaintiffs, Cross-defendants and Respondents.

_____

**SUMMARY**

The trial court entered a judgment in favor of a plaintiff who sought to quiet title to two claimed easements within residential gated communities in which plaintiff has no ownership interest. The judgment found plaintiff was entitled to an express easement (or in the alternative a prescriptive easement) and an equitable easement over all the private streets in a gated community (Indian Springs) in Chatsworth, and likewise was entitled to express (or in the alternative, prescriptive) and equitable easements over a homeowner's lot (the Lenope property) in an adjacent gated community (Indian Oaks). Together, the two claimed easements provided access, from the west, to the plaintiff's ranch, which she or her lessee used to stable horses owned by them and by members of the

2

public.  Ranch operations required deliveries of supplies in large trucks, removal of manure, visits by veterinarians, access by members of the public to ride or visit their horses, and so on.

Plaintiff also had access to her ranch by a different route (from the east) that included an undisputed right to travel over one now-private street (Iverson Road) in Indian Springs and other now-private streets in a third gated community (Indian Falls).  Plaintiff finds this route to her ranch unacceptable because, after passing through Indian Springs and Indian Falls, the route requires use of an old and narrow bridge on Fern Ann Falls Road that she considers dangerous.  This bridge is on private property, but not on property that is part of any of the three gated communities.

We conclude the trial court erred on several points.

First, the court found the individual homeowners in Indian Springs, who owned the private streets abutting their lots to the mid-line (subject to reciprocal easements with other homeowners), were not indispensable parties to plaintiff's lawsuit, but nonetheless were bound by the judgment.  This was clear error.

Second, the court erred when it found an express easement over all the private streets of Indian Springs.  The declaration of easement plainly shows on its appended map the exact route of the easement, over only one private street (Iverson Road) in Indian Springs, and then over the private streets of Indian Falls. (There is no controversy over the use of the private streets in Indian Falls.)

Third, the judgment provides an express easement "or, alternatively, a prescriptive easement," but the court's statement of decision did not mention or discuss a prescriptive easement.

3

Plaintiff did not establish the requirements for a prescriptive easement over the private streets of Indian Springs, or over the Lenope property.

Fourth, the court failed to make the necessary findings to support an equitable easement, and the record does not contain evidence to support the factors that are necessary to impose an equitable easement over the private streets of Indian Springs, or over the Lenope property.

Fifth, while a recorded easement exists over the Lenope property (granted by plaintiff when she owned the Lenope property), the easement by its terms does not benefit plaintiff's ranch, and instead benefits a third property that plaintiff no longer owns. In any event, plaintiff cannot use that easement because it cannot be reached except through the private streets of Indian Springs, to which plaintiff has no right of access.

Accordingly, the judgment must be reversed.

## FACTS

**1.    The Parties and the Properties[1]**

This case may be most readily understood by a chronological narration of the background facts. This narration begins in 1982, when development of the gated communities of

---

[1]    To assist in understanding this opinion, we append an illustration with colored legends created by one of the parties. (See appendix A, *post,* page 52.) The illustration is not in evidence, and is included only for demonstrative purposes. Note that the "Declaration of Easement Route" shown (in green) is the easement route as this court finds it. Plaintiff contends to the contrary that the easement route includes some of the private streets in Indian Springs (all of which are shown in red).

4

Indian Springs and adjacent Indian Falls began (the latter is not involved in this litigation).

In 1982, the developer of Indian Springs filed a declaration establishing the covenants, conditions and restrictions (CC&R's) governing Indian Springs. The CC&R's established the Indian Springs Homeowners Association, Inc., a defendant in this case (Indian Springs HOA). There were 57 lots in the tract (Tract No. 33622), and "private streets" were identified as Zaltana Street, Avenita Court, Serafina Drive (now La Quilla Drive) and Taima Avenue. The common area was defined as the security gate and "the reciprocal easements held by and against each owner for use and maintenance of the Private Streets installed over portions of each Lot, as shown on the Map."[2] The tract map of Indian Springs shows ownership lines to the center of the private streets.

In 1996, the plaintiff, April Hart, purchased a ranch at 22575 Fern Ann Falls Road in Chatsworth. (The ranch has been owned at various times by Ms. Hart; Ranch at the Falls, LLC; and another entity. The parties have stipulated that these are alter egos of Ms. Hart, so we will refer to her as plaintiff.) The Fern Ann Falls area is not a part of any of the three gated communities that are relevant to this case (Indian Springs, Indian Oaks, and Indian Falls). Indian Falls lies to the east of plaintiff's ranch; Indian Oaks (which did not exist in 1996) lies to the west of the ranch; and Indian Springs lies to the south of

---

[2]     The 1982 CC&R's were restated on March 13, 2002, consolidating various amendments made between 1984 and 2002. There are no changes pertinent to this appeal.

Indian Oaks and the ranch. Public access to plaintiff's ranch from the east was available over a route including Iverson Road.

That year (1996), plaintiff built a "horse ring," and to do so brought in ten truck and trailer loads of sand to the ranch from the west, coming "[a]cross what is now known as Indian Oaks, and south, what is now known as Indian Springs," and "the tractor had to obviously make some roads in there."

On June 1, 1998, the Indian Springs HOA recorded a declaration of easement in favor of abutting landowners, including plaintiff's ranch (the 1998 easement declaration). The declaration recited that Indian Springs HOA was "the owner of certain common areas within Indian Springs Estates, including the private streets through the project (hereafter 'Servient Tenement'), pursuant to" the 1982 CC&R's. The recitals also stated that Los Angeles County was vacating the county's easement for public streets over the servient tenement. The only public street in Indian Springs was Iverson Road. This privatization of public streets was "conditioned upon the conveyance of a non-exclusive easement for ingress and egress throughout the Servient Tenement" to owners of the dominant tenement (including plaintiff's ranch). The declaration further recited the Indian Springs HOA's desire to comply with the conditions established by the county "by conveying to the owners of lots in the Dominant Tenement an appropriate easement."

The body of the declaration then conveyed "an easement for ingress and egress and related purposes over the private streets in the Servient Tenement as depicted on the Map attached hereto as Exhibit 'B'." The map identified the "streets involved in grant of easement" by means of dotted hatching over those streets. The only street in Indian Springs so identified is Iverson Road. The

6

other private streets on the easement route were in the neighboring community of Indian Falls.  (On April 1, 1998, the Indian Falls Homeowners Association (Indian Falls HOA) executed a similar declaration of easement in favor of plaintiff and other abutting landowners, over "the private streets in the Servient Tenement as depicted on the Map attached hereto as Exhibit 'B'."  This was the same map as that attached to the Indian Springs easement declaration, showing Iverson Road in Indian Springs and the private streets in Indian Falls as "streets involved in grant of easement.")

On March 23, 1999, the Board of Supervisors of Los Angeles County adopted a resolution privatizing the same streets depicted on the maps just described:  "Iverson Road & Streets Within Tract No. 42353."  (Tract No. 42353 is Indian Falls.)

The effect of the Indian Springs declaration of easement, which was accepted by the county, was to grant an easement to abutting landowners over Iverson Road, and no other private streets within Indian Springs.

Contemporaneously with their declarations of easement, the Indian Springs and Indian Falls HOAs also made "Easement and Maintenance Agreement[s]" with each other.  (These are substantively identical; the parties refer to them as the "maintenance agreements.")  Each homeowners association gave the other and abutting property owners "right of way easements over and across those portions of the private streets as depicted on Exhibit '3' hereto within Indian Falls Estates and Indian Springs Estates.  The easements are granted only to create a direct path through the respective projects for ingress and

7

egress." Exhibit 3 showed the same streets as shown on the maps attached to the two easement declarations.[3]

In 2002, grading began for the development of Indian Oaks.

In November 2002, plaintiff and her then-husband bought property in Indian Springs, at 22545 La Quilla Drive, and moved there from the ranch (where plaintiff had lived since 2000). Her move to Indian Springs gave her the right to use the private streets of Indian Springs. She lived in Indian Springs until 2008.

On October 31, 2005, plaintiff purchased property in Indian Oaks, at 22602 Lenope Drive (the Lenope property), for $1.7 million. (She testified that she had been trying to buy that parcel of land "that butted up to Fern Ann Falls, because I wanted to have an appropriate access to [the ranch].") She built a 15-feet-wide roadway over the Lenope property (the Lenope roadway) that connected it with Fern Ann Falls Road. Together with the private streets of Indian Springs and Indian Oaks that, as a homeowner, she was entitled to use, the Lenope roadway gave plaintiff access to her ranch from the west.

---

[3] In the maintenance agreements, each homeowners association agreed to "administer and manage the operation, maintenance and repair of the Private Streets and Access Gate located within the boundaries of its respective project." The agreement stated that, as a condition imposed by the county, each homeowners association had recorded the easement declarations (described in the text, *ante*) in favor of abutting property owners. The agreement contained a clause entitling the prevailing party to attorney fees, "[i]f any action at law or in equity is necessary to enforce or interpret the terms of this Agreement and if either party files any action or brings any proceeding against the other party arising out of this Agreement . . . ."

In 2005, plaintiff (through her alter ego, Ranch at the Falls) also purchased a property at 22590 Fern Ann Falls Road. (The parties refer to this as the Friese property, as plaintiff sold it to Donald Friese in September 2013.) The Friese property is across the road and south of plaintiff's ranch, and adjoins the east side of the Lenope property.

In May 2007, the Indian Oaks Homeowners Association (Indian Oaks HOA) wrote to plaintiff, telling her that her hay delivery vehicles and other uses of the streets at Indian Oaks "could be considered running a business from your home even though the horse ranch is not actually located at the Oaks," and asked plaintiff to correct the problem. A notice on January 17, 2008, told plaintiff she was in violation of the Indian Oaks CC&R's.

In August 2008, Indian Springs HOA wrote to plaintiff about hay trucks and horse trailers using the interior streets of Indian Springs for access to the ranch, advising her that such traffic was "only allowed to use Iverson."

By 2008, plaintiff had rented the ranch to about seven different persons or entities. From 2008 to 2011, only plaintiff used the ranch, for "my horses." (Plaintiff testified that when she moved onto the ranch property in 2000, she had five or six horses.)

In 2010, plaintiff granted a permanent easement over the Lenope roadway to Ranch at the Falls (her alter ego that owned the Friese property). The grant states that plaintiff "hereby grants to Ranch at the Falls LLC permanent easement for the benefit of the property known as 22590 Fern Ann Falls [the Friese property], over/under/on/across the land located as

9

described in Exhibits A and B [the Lenope roadway] for ingress and egress purpose(s)."

In December 2012, plaintiff sold the Lenope property to defendants Keith O'Neal and Gladys Maniago (collectively, O'Neal). The purchase price was $775,000. (The property had been listed at $849,999, as a short sale subject to the lender's approval.)[4] Plaintiff told O'Neal about the easement, and testified she "wouldn't have signed their offer if they didn't assure me that they would never try and overturn that easement." However, there is no evidence of any deed reserving for plaintiff's ranch property any right to use the easement after she sold the Lenope property to O'Neal.

In September 2013, plaintiff sold the Friese property to Donald Friese. There is also no evidence of any deed involved in this transaction that granted plaintiff or Ranch at the Falls LLC any right to use the easement after the sale to Mr. Friese.

In 2013, plaintiff leased the ranch to Randy Cano Training Stables, Inc. The rent was $4,000 a month, and the term of the lease was two years. The lease began in August 2013. The

---

[4]     Plaintiff asserts the lender agreed to the short sale "based upon representations made by [O'Neal] that the Lenope Roadway Easement significantly impacted and devalued their property." The authority cited for this statement is an addendum to the purchase agreement describing "impediments regarding the Property that should be taken into consideration regarding the 'Short Sale'." One of the impediments (there were four others) listed was the easement, described as "a MAJOR HUGE problem," running "DIRECTLY through the front yard of the Property" that was "being accessed CONSTANTLY" by the ranch. (The Lenope property was appraised, as of October 4, 2012, at $775,000.)

number of horses he had on the property was "somewhere in the 30's." During his tenancy, there were hay deliveries on "big semi trucks," "like a tractor/trailer," "[a] minimum of probably every ten days." There were shavings deliveries on semi-trucks ("the big ton trucks") "one to two times a month," and manure removal "[t]wice a month." Blacksmiths came to the ranch at least once a week, sometimes more, using "a large one-ton pickup truck with very heavy blacksmith equipment." A veterinarian service came to the property "maybe once a week." Most of the owners of the horses stabled at the ranch (about 25) came to the ranch on a daily basis to ride or see their horses. Plaintiff told Mr. Cano "that [he] could use the bridge [from the east], or the Lenope roadway [from the west]."

In mid-June 2014, O'Neal erected a gate on the Lenope property that blocked access to the Lenope roadway. Mr. Friese, who now owned the Friese property (the dominant tenement in the 2010 Lenope roadway easement), gave O'Neal permission to do so.

On June 30, 2014, plaintiff filed a complaint against O'Neal, alleging causes of action for quiet title, nuisance and declaratory relief. Plaintiff obtained a temporary restraining order, and on July 22, 2014, a preliminary injunction restraining O'Neal from maintaining a gate or otherwise interfering with plaintiff's use of the Lenope roadway, pending trial.

A few months later, on October 23, 2014, plaintiff filed a first amended complaint, adding causes of action against Indian Springs HOA and Indian Oaks HOA for quiet title, nuisance and declaratory relief, and against Lantz Security Systems, Inc. (now Eagle Knight Security Systems, Inc.) for declaratory relief. She alleged that public use of the private streets in Indian Springs

11

and Indian Oaks had been a condition of their development (in fact this was not the case), and as a result, plaintiffs, as members of the public, had easement rights over those streets. Plaintiff alleged that after she obtained the preliminary injunction against O'Neal, the homeowners associations refused to allow access to the private streets of Indian Springs and Indian Oaks leading to the Lenope roadway. Instead, defendants required plaintiff and her vendors and invitees to wait for a guard from Eagle Knight to escort their vehicles, and the guard then forced the vehicles to use the Iverson Road route to the ranch, "over a dangerous, narrow bridge on Fern Ann Falls Road."

The court granted a temporary restraining order, and on November 14, 2014, granted a preliminary injunction, restraining defendants from delaying, escorting and redirecting vehicles or otherwise interfering with plaintiff's use of the private streets of Indian Springs and Indian Oaks to access the Lenope roadway.

Meanwhile, on October 1, 2014, Mr. Cano had written to plaintiff about the problems he and his clients and vendors were encountering, including vendors in semi-trucks and large vans being escorted over "what appears to be a very unsafe and narrow bridge," and who were "now refusing to deliver." Mr. Cano doubted he could "continue to conduct business at this location much longer," and intended "to consider other options."

On November 1, 2014, Mr. Cano informed plaintiff that "as of December 1, 2014, I will have to give up my monthly tenancy on your property." He stated the "problem with the HOA's has become unbearable," he had lost several clients because of the harassment, and "I can no longer afford the up keep here."

12

## 2.    The Litigation

The litigation continued.  O'Neal and Indian Springs HOA filed a cross-complaint against plaintiff, among other things seeking to quiet title based on the Indian Springs HOA's 1998 easement declaration.[5]  In May 2015, plaintiff filed a second amended complaint (the operative pleading), adding a cause of action for intentional interference with contractual relations.  Various answers were filed, including an amended answer by Indian Springs HOA asserting an affirmative defense of failure to name the homeowners in Indian Springs as indispensable parties.[6]

In October 2016, both O'Neal and the Indian Springs HOA filed motions for judgment on the pleadings.  O'Neal's motion contended plaintiff did not have standing to enforce the Lenope roadway easement because the easement benefited the Friese property, which plaintiff no longer owned.  In addition, O'Neal asserted the easement was unenforceable under the doctrine of merger, as plaintiff and her alter ego owned both properties when she granted the easement.  Indian Springs HOA argued the

---

[5]    The cross-complaint alleged causes of action for abandonment and extinguishment of easement, quiet title, trespass, nuisance, unjust enrichment and declaratory relief.

[6]    In May 2015, plaintiff and Indian Oaks HOA agreed to a settlement.  Indian Oaks agreed not to oppose plaintiff's claims, so long as there were no damages or costs assessed against it, and so long as no additional burdens beyond access to the ranch through the Lenope roadway were placed on Indian Oaks.  Indian Oaks agreed to abide by any determination made by the court or any settlement between the parties in connection with plaintiff's easement claims.

private streets were owned by the homeowners, not the association, and they were indispensable parties to the litigation. Further, Indian Springs asserted the facts pleaded were insufficient to sustain an express or prescriptive or equitable easement. The trial court denied both motions.

Indian Springs HOA filed a petition for writ of mandate which we summarily denied.

Plaintiff filed an ex parte motion to amend her complaint to assert a claim for attorney fees based on the 1998 maintenance agreements between the Indian Falls and Indian Springs HOAs. (See pp. 7-8 & fn. 3, *ante*.) The trial court denied the ex parte motion, but apparently ruled plaintiff could amend according to proof.[7] At the close of plaintiff's evidence, the parties revisited the subject, and after argument, the trial court granted the motion to amend the complaint.

The trial court visited the site on February 14, 2017, before testimony began. Nineteen witnesses testified at a trial that lasted for seven days. At the close of plaintiff's evidence, defendants made an oral motion for judgment (Code Civ. Proc., § 631.8) based on failure to join indispensable parties; the court denied the motion.[8]

In a footnote in their closing brief on April 3, 2017, defendants requested a statement of decision explaining the factual and legal basis for decisions on 13 specified issues.

---

[7] In his opening statement, discussing the 1998 maintenance agreements, defense counsel stated that "I know your order from last week was plaintiffs can amend according to proof."

[8] Further statutory references are to the Code of Civil Procedure unless otherwise specified.

14

Defense counsel had also requested a statement of decision during his opening statement at trial.

### 3.     The Trial Court's Ruling

On April 10, 2017, the trial court issued its written and signed "ruling and statement of decision," finding in favor of plaintiff on all her causes of action.  We quote extensively from pertinent parts of the court's description of the evidence on which its decision was based.  In footnotes and in a parenthetical explanation in the text, we note errors in the court's fact finding.

"To access Fern [Ann] Falls Road [where the ranch is located] from the East, it is necessary for vehicles to travel around a blind curve, descend down a grade, and cross an 11 foot wide bridge, located at the East end of Fern [Ann] Falls Road."  The only record of the bridge "was from approximately fifty (50) years ago . . . .  There is no record of when the bridge was constructed or to what standard, if any.  The Expert testimony of Donald Khalighi, a Civil Engineer, indicated that the bridge was too narrow, had no guard rails, lighting, or proper drainage under the bridge."  The trial court also cited the testimony of Nina Johnson, a fire protection engineer assistant with the Los Angeles County Fire Department.  Ms. Johnson had seen the bridge some years ago, and was familiar with fire codes and their applicability to the bridge.  Under the current fire code, bridges were required to be 20 feet wide and able to support 75,000 pounds.[9]  (Ms. Johnson also testified about plaintiff's

---

[9]     The trial court stated Ms. Johnson "testified that the bridge was not safe for use by the fire department," but she did not make that statement.

current efforts to correct fire code violations and obtain permits for five nonpermitted structures on her ranch.)

The trial court described the route from the west through Indian Springs and Indian Oaks to the Lenope roadway, stating it was "the preferred route to avoid [the] narrow, unsafe bridge at the East access . . . . There was also testimony that large trucks which service the ranches, trash companies, and the US Post Office, will not use the East entrance because of the unsafe conditions of the road and bridge, as mentioned above."

The trial court cited plaintiff's testimony "that she has been to her ranch property on a daily basis since 1996. . . . She boards her own horses and also leases out space for boarding and training of horses for private individuals. The ranch has had as many as thirty (30) to fifty (50) horses for boarding and training."[10] The court found that "equity bars the application of the merger doctrine to prevent the granting of an express easement to the Plaintiff. There was no testimony that Plaintiff intended a merger." (This refers to the Lenope roadway easement plaintiff granted to her alter ego as owner of the Friese property.)

"Plaintiff testified that because of the unsafe condition of the bridge for the past twenty (20) years, she has primarily accessed her ranch from the West by way of dirt roads prior to the development of Indian Oaks [which began in 2002]. The access to her ranch became more defined with the development of Indian Oaks and the Lenope Place access to Fern Ann Falls Road. . . . This was especially necessary for access of large trucks

---

[10]    The evidence only showed the number of horses at the property (30 to 35) during the time Mr. Cano leased the ranch, beginning in 2013.

16

and equipment to access her ranch.  [Citing aerial photo exhibits.]"

The trial court cited the testimony of David Ruiz, an expert in aerial imagery analysis.  Mr. Ruiz testified "that his review of the historical photographs taken in the 1900s [the earliest of these was 1994] established Plaintiff's use of the easement over the streets in Indian Springs and Indian Oaks developments, as well as over the L[e]nope Place property now owned by Defendants Keith O'Neal and Gladys Maniago.[11]  A recorded easement exists over the property to use the streets of Indian Oaks.[12]  A conditional tract map of the Indian Oaks

---

[11]     Mr. Ruiz's testimony addressed the Indian Oaks area, and he used later photographs (mostly from 2002 and 2003) in identifying a dirt road that he said went through what is now the Lenope roadway.  A 2003 photograph shows a graded area where the Lenope roadway now exists.  As to the earlier photographs, Mr. Ruiz testified that an October 13, 1997 photograph showed "no evidence of vehicle use over the area in which the Lenope property was eventually constructed."  A trail directly east of it was a horse trail.  An October 21, 1999 photograph, evidencing vehicle use of dirt trails, likewise showed no evidence of vehicle use over what would become the Lenope property.  Mr. Ruiz also testified about a 1994 photograph evidencing vehicle use over a trail, which he said was "a thin trail," that would require four-wheel drive and would not support a vehicle pulling a trailer.  It, too, did not traverse the area where the Lenope property was later built.

[12]     This apparently refers to the 1996 deed to plaintiff's ranch. The deed grants plaintiff Parcels 1 and 2 (the ranch), and Parcel 3, "[a]n easement for ingress and egress to be used in common with others over that portion of Fern Ann Falls Road, which road has been in use for more than twenty years in the

development was to 'grant to the general public a non-exclusive easement for ingress and egress and road purposes over the private and future streets of this land division . . . .' " (This refers to conditions imposed by the Department of Regional Planning in 2001 for filing a final vesting tentative tract map for the development of Indian Oaks. However, as Indian Springs HOA points out without contradiction, the county did not accept the offer for public dedication, so the Indian Oaks streets remained private streets.)

The trial court then described evidence concerning plaintiff's lease of the ranch in 2013 to Mr. Cano, for the boarding and training of approximately 35 horses. Plaintiff, Mr. Cano and one of his employees "testified that . . . Indian Springs [HOA], the security company, [defendant Eagle Knight], and [O'Neal], were interfering with the access to Fern [Ann] Falls Road. The Plaintiff and Mr. Cano further testified that security personnel, at the direction of Indian Springs, [were] to delay entry of any of the clients and/or service going to the Plaintiff's ranch. The security personnel [were] directed to do this by requiring an escort to the ranch, and at times, there would be no escort available, so there would be long delays before people could proceed to the ranch."

The trial court described defendant O'Neal's property at Lenope Place. O'Neal "had installed a gate to block all traffic entering from L[e]nope Place. There was further testimony that Mr. Cano's clients were harassed and chased off the street and

---

past, and as it now exists, as of the date of this conveyance [January 24, 1996]," followed by a metes and bounds description. There is no evidence this easement is recorded in the chain of title to any property in Indian Oaks.

were being denied entrance by the security company and by [O'Neal].  There was testimony that Mr. O'Neal had met with directors of the Indian Oaks Homeowners Association and Indian Springs Homeowners Association and there was a joint effort between all defendants . . . to restrict and/or stop all use of the West entrance to anyone traveling to Fern [Ann] Falls Road or the Plaintiff's property.  Mr. Cano, as a result of the above impediment to his business, wherein he lost several clients, was forced to break the lease and relocate all of the horses on or about December 1, 2014, or eight months prior to the expiration of the two year agreement.  Mr. Cano further testified that he planned continuing business with [plaintiff] for at least five years had the Defendants not impacted his livelihood."[13]

The court described the short sale of the Lenope property to O'Neal, observing the price was one million dollars less than plaintiff's purchase price.  The court observed that O'Neal "stated and acknowledged the existing easement, which was included in the title to the property, and was one of the primary reasons they received a substantial reduction in the sale of the property from the bank."

Other relevant evidence adduced at trial but not mentioned in the trial court's ruling will be described in connection with our discussion of the legal issues the parties raise on appeal.

After reciting the facts we have described, the court rejected defendants' contention that the individual homeowners in Indian Springs were indispensable parties.

---

[13]     Actually, Mr. Cano testified he had leased property at his previous location for six years, and assumed he would extend his lease for the ranch beyond its two-year term.

The court then ruled that judgment was to be entered in favor of plaintiff on each of her nine causes of action (although the court made no mention of the prescriptive easement plaintiff sought as an alternative to an express easement). The court awarded $4,000 per month from December 1, 2013, until entry of judgment against all defendants; gave judgment to plaintiff on defendants' cross-complaint; and stated attorney fees and costs would be awarded to plaintiff. Plaintiff was ordered to pay Indian Springs HOA $100 per month "for the use and maintenance of the streets and security of Indian Springs and Indian Oaks," and the November 13, 2014 preliminary injunction was made permanent.

## 4. Proceedings After the Statement of Decision

Defendants applied ex parte to vacate the statement of decision and issue a proposed statement of decision. Defendants contended the statute and rules required issuance of a tentative decision and an opportunity to file objections, and asserted numerous "ambiguous, omitted or defective findings." The trial court denied the motion.

Plaintiff submitted a proposed judgment on April 27, 2017. The proposed judgment, unlike the statement of decision, found in favor of plaintiff on her quiet title claims based on an express easement "or, alternatively, a prescriptive easement" against both O'Neal and Indian Springs HOA. The proposed judgment against Indian Springs also expressly stated that "any third party individual homeowners who are affiliated in any way with Defendants [Indian Springs and Indian Oaks HOAs], including as . . . members, . . . are bound by this judgment." The following day, plaintiff filed a motion for attorney fees and costs.

20

Defendants filed objections to the proposed judgment on May 3, 2017. On May 10, 2017, the trial court entered judgment, without ruling on the objections or altering the proposed judgment.

On May 22, 2017, the trial court awarded plaintiff attorney fees of $199,459, based on plaintiff's claimed status as a third party beneficiary of the 1998 maintenance agreements (see fn. 3, *ante*) between Indian Springs and Indian Falls HOAs.[14]

Defendants filed motions for a new trial and motions to set aside the judgment, which were denied.

Eighteen homeowners who were not joined as defendants in plaintiff's quiet title causes of action (third party movants) filed a motion to vacate the judgment that was also denied.

Indian Springs HOA, O'Neal, Eagle Knight, and third party movants filed timely notices of appeal.

## DISCUSSION

We note several preliminary points.

First, in her respondent's brief, plaintiff concedes that defendant Eagle Knight (the security company) is not liable for damages, and that she seeks only declaratory relief and a permanent injunction against Eagle Knight. Our conclusions in the case as to the other defendants make it unnecessary to separately consider those claims as to Eagle Knight.

Second, plaintiff filed a motion with her respondent's briefs requesting judicial notice of a 43-page document prepared by the

---

[14] The trial court stated its belief all the causes of action were intertwined, and "the evidence was clear. Basically, the people are landlocked, forcing them to go over that bridge which, in the court's finding, is unsafe."

21

Chatsworth Historical Society. She tells us it was not presented to the trial court, and "gives appropriate context" to certain exhibits. We find the document is irrelevant and deny the motion.

Third, we grant defendant Indian Springs HOA's unopposed motion for judicial notice of a grant deed and of higher resolution copies of four other documents admitted into evidence in the trial court.

## 1.    Indispensable Parties and the Express Easement

As we observed at the outset, we agree with defendants that the Indian Springs homeowners were indispensable parties to the litigation, and that the express easement granted by Indian Springs HOA was confined to Iverson Road. As it happens, these two points are related, because the rationale for the trial court's ruling on the indispensable party issue was centered on an erroneous construction of the 1998 easement declaration. Plaintiff makes the same arguments on appeal, asserting, for example, that third party movants' claim to be indispensable parties "is premised on an erroneous position that they are fee simple owners of the streets of the Indian Springs HOA." But they are indeed owners of the private streets, as we now explain.

### a.    Indispensable parties

The Indian Springs homeowners should have been joined as parties, as required under the quiet title statutes. (§ 762.010 ["The plaintiff shall name as defendants in the action the persons having adverse claims to the title of the plaintiff against which a determination is sought."]; § 762.060, subd. (b) ["the plaintiff shall name as defendants the persons having adverse claims that are of record or known to the plaintiff or reasonably apparent

22

from an inspection of the property"]; see also § 389 [governing indispensable or conditionally necessary parties].)[15]

Our conclusion necessarily flows from the undisputed evidence that the individual homeowners in Indian Springs have title to their lots to the center of the private streets they abut. Thus, testifying about the tract map for Indian Springs (Tract No. 33622), Robert D. Hennon, a licensed land surveyor and expert witness for defendants, pointed out that "[y]ou can see how the ownership lines of the adjoining parcels all go to the center of the streets." (See also *Safwenberg v. Marquez* (1975) 50 Cal.App.3d 301, 308 [referring to the presumption that where property is sold by reference to a recorded map, the grantee takes to the center of the street shown on the map; the presumption "continues to apply in the absence of a clear expression in the deed not to convey title to the center line," italics omitted]; Civ. Code, § 1112 ["A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a

_____

[15]      "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.  If he has not been so joined, the court shall order that he be made a party."  (§ 389, subd. (a).)

23

different intent appears from the grant."].)  Mr. Hennon's evidence was not disputed.

A quiet title judgment cannot be entered in the absence of all parties with an interest in the property at issue.  (See *Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 667 ["A person is an indispensable party to litigation ' "if his or her rights must necessarily be affected by the judgment." ' "].)  The judgment entered by the trial court states that "any third party individual homeowners who are affiliated in any way with Defendants [Indian Springs and Indian Oaks HOAs] are bound by this judgment."  That cannot be the case unless the owners of the private streets were parties, or unless, as a matter of law, Indian Springs HOA had the authority to bind its members to the grant of an easement over the streets owned by the members.  While Indian Springs HOA had the authority to grant nonexclusive easements "over that portion of each Lot designated as the Private Streets," this was *only* to the extent necessary for maintenance, trash pickup and similar services.[16]

---

[16]    The CC&R's state, concerning "Easements for the Benefit of the Project," that "[t]he Association shall have, and shall have to further grant, nonexclusive rights, easements and licenses over that portion of each Lot designated as the Private Streets, to the extent necessary for trash pick-up, mail delivery, street light maintenance, median strip maintenance, or other similar services for the benefit of the Owners and the Project."  Further, as to "Private Streets," the CC&R's state:  "The Developer hereby grants an easement to the Association and hereby declares an easement for the benefit of and appurtenant to each Lot for ingress and egress and underground utility service over that portion of each Lot designated as the Private Streets and for the construction and operation of the gate over that portion of

The trial court nonetheless concluded that the Indian Springs HOA, "which alone executed and granted the easement at issue, was the proper party," and the individual homeowners "were not indispensable parties." The trial court based its conclusion on the CC&R's and the 1998 easement declaration, stating that the latter "expressly states (and was executed on behalf of all individual homeowners) that under the [CC&R's], the Indian Springs Homeowners Association is the owner of the Private Streets through the project." This was a mistaken interpretation of those documents.

### b.    The declaration of easement and the CC&R's
#### i.    The CC&R's

The court cited various definitions in the CC&R's, observing that the definition of " 'Owner' " referred to "the record owners of the fee simple title to any Lot," and the term " 'Lot(s)' " does not mention the Private Streets. (That is incorrect because the CC&R's define " 'Lot(s)' " to "mean and refer to any plot(s) of land numbered 1 to 57, inclusive, of Tract 33622 as shown on the Map." As noted above, the undisputed testimony was that the tract map showed ownership lines to the center of the street.) The court also observed that the definition of " 'Private Streets' " did not include "any reference to fee ownership by individual owners."[17] Further, the court cited the definition of " 'Common

---

[specified Lots] designated as the Private Streets subject to [specified] provisions."

[17]    The CC&R's define " 'Private Streets' " to "mean and refer to the Property shown as Private Streets designated Zaltana Street, Avenita Court, Serafina Drive and Taima Avenue of the Map of Tract 33622 and shall include all improvements located on or within the Private Streets." (" 'Property' " is defined in the

Area' " ("the security gate and appurtenances thereto, and the reciprocal easements held by and against each owner for use and maintenance of the Private Streets installed over portions of each Lot, as shown on the Map").

The court concluded from those definitions, "combined with the Declaration of Easement," that Indian Springs HOA owns all the private streets. We see nothing in those definitions (or the declaration of easement, as explained below) that supports the trial court's view, or that contradicts the individual homeowner's ownership of the private streets to the midline, as established by the tract map (and confirmed by the limited scope of the easements the CC&R's specifically grant to the HOA). To the contrary, the CC&R's nowhere suggest the HOA "owns" the private streets. The fact that all the owners have reciprocal easements for use and maintenance of "the Private Streets installed over portions of each Lot" is entirely consistent with each owner's title to the portion of the private street installed over his or her lot.

### ii. The declaration of easement

The declaration of easement is the only other source the trial court cited (incorrectly) as demonstrating the HOA's ownership of the private streets. The declaration, in its first recital, stated the Indian Springs HOA was "the owner of certain common areas within Indian Springs Estates, including the private streets through the project (hereafter 'Servient Tenement'), pursuant to" the 1982 CC&R's. It is this language

---

recitals of the 1982 CC&R's as "Lots 1 through 57 of tract 33622 as shown on map (the 'Map') recorded in Book 993, Pages 66 through 75, inclusive, of Maps, Records of Los Angeles County, California.")

26

the trial court, and plaintiff, point to as establishing the Indian Springs HOA owns the private streets (and therefore had authority to grant an easement over all of them, not just Iverson Road). In addition, plaintiff points to the language by which Indian Springs HOA granted the easement, which uses the plural (private streets, not "street"), granting "an easement for ingress and egress and related purposes over the private streets in the Servient Tenement as depicted on the Map attached hereto as Exhibit 'B'."

To the extent the quoted language in the recital is ambiguous, any ambiguity is resolved by the remainder of the document; by related documents in the record that were recorded contemporaneously; and by testimony from the authorized member of the board of directors who executed the easement declaration for Indian Springs HOA and from the attorney who prepared the easement declaration.

The easement declaration unambiguously states it is confined to the private streets depicted on the map attached to the declaration. There is no getting around the fact that the private streets depicted on the map are *only* Iverson Road and the private streets in Indian Falls. So, even if Indian Springs HOA were the owner of all the private streets in Indian Springs (and it is not), it did not grant plaintiff an easement over all those streets.

Plaintiff cannot explain away the map. Plaintiff merely asserts – incorrectly, and therefore without any citation to authority – that the contention that the map controls "over the written language of the easement" is "simply not the law in California." But here, the "written language of the easement" specifically uses the map to show the easement route. Plaintiff

27

cites no legal authority that supports her contrary view of "the law in California." It has long been the law in California that plat maps may be used to precisely define an easement, and when an easement is defined by a map, it is decisive. (*Wilson v. Abrams* (1969) 1 Cal.App.3d 1030, 1035 [absence of language does not "infect[] the instrument with the lack of specificity urged. The easement was granted pursuant to a plat map attached to the instrument, and it is settled that easements may be conveyed in such manner"].)

Other contemporaneous events and documentation make it clear that the map, and not the use of the plural (private "streets") specifies the limits of the easement.

As mentioned earlier, both the Indian Springs and Indian Falls HOAs recorded their easement declarations in favor of plaintiff and other abutting landowners in 1999, at the same time.[18] (To repeat, Indian Falls is the gated community to the east of plaintiff's ranch. The Indian Falls CC&R's were first recorded in 1997.) The easement declarations are virtually identical, and use the same map showing the "streets involved in grant of easement."

In Indian Falls (unlike Indian Springs), all the streets had been public streets, and Indian Falls sought to have those streets privatized. At the same time, Indian Springs sought to privatize portions of Iverson Road, the only public street in Indian Springs. The county treated the applications of Indian Falls and Indian Springs to privatize their streets as a single transaction. The

---

[18] The two easement declarations have consecutive filing numbers: 99-1112958 (Indian Falls) and 99-1112959 (Indian Springs).

county's conditions for privatization included, as stated in the easement declarations, "the conveyance of a non-exclusive easement for ingress and egress throughout the Servient Tenement" to abutting property owners. Both Indian Springs and Indian Falls HOAs complied with that condition by conveying an easement "for ingress and egress and related purposes over the private streets in the Servient Tenement as depicted on the Map attached hereto as Exhibit 'B'."

The report to the Board of Supervisors from the Department of Public Works described why it was recommended the county vacate its rights of way to these streets: "The Indian Falls Homeowners' Association and Indian Springs Homeowners Association requested the vacation to restrict public access, privatize existing streets and establish a gated community." The report further stated: "All the streets proposed to be vacated have been built to County standards and, except for the portion of Iverson Road which is a County highway, have been maintained by the Homeowners' Associations. Maintenance of the vacated streets, including that portion of Iverson Road discussed above, will continue to be the responsibility of the Homeowners' Associations, should your Board approve the vacation. *These streets will remain private streets for use by the adjoining property owners and the owners of properties dependent on these streets for access*. This requirement is provided for in the Homeowners' Association [CC&R's], and in the agreements and the declaration of easement." (Italics added.) An attached map showed the streets being privatized, and they are the same streets shown on the two easement declarations. In March 1999, the Board of Supervisors adopted a resolution as recommended, privatizing "Iverson Road & Streets Within Tract No. 42353 [Indian Falls]."

These documents clearly establish the scope of the Indian Springs declaration of easement, but there is more. As noted earlier (see pp. 7-8 & fn. 3, *ante*), simultaneously with their easement declarations, the Indian Springs and Indian Falls HOAs recorded the two maintenance agreements they made with each other.[19] Each homeowners association gave the other and abutting property owners "right of way easements over and across those portions of the private streets as depicted on Exhibit '3' hereto" – again, the same map as the one attached to the easement declarations. The maintenance agreements stated the owners of abutting properties were to "use the Iverson Road entrance exclusively." (There was to be another access gate on Poema Street in Indian Falls.) These agreements, too, referred to the easement declarations each association had recorded in favor of the abutting property owners as a condition imposed by the county.

In sum, all the references in the county's documents to the "streets" are to the streets in which the county vacated its rights of public access, and those are *only* the streets in Indian Falls and the portion of Iverson Road in Indian Springs. The other contemporaneous documents – the maintenance agreements and the Indian Falls declaration of easement – are to the same effect.

We digress briefly to address plaintiff's contention, and her counsel's repeated assertions at oral argument, that the easement declaration requires "an appropriate easement," and that the easement route depicted on the map is not "appropriate" because it forces plaintiff to use the unsafe bridge on Fern Ann

---

[19] The recorded numbers of these documents are 99-1112956 and 99-1112957, the numbers immediately preceding the two easement declarations.

Falls Road. (The "appropriate easement" language appears in one of the recitals in the easement declaration, stating the declarant's "desire[] to perform the conditions established by the County of Los Angeles by conveying to the owners of lots in the Dominant Tenement an appropriate easement.") Plaintiff claims this recital required Indian Springs "to make the Fern Ann Falls bridge safe and drivable when seeking vacation of the public streets from the County."

Plaintiff cites no authority for that proposition, and we can imagine none. For one thing, a descriptive term in a recital does not change the clear language of the easement grant. For another, the bridge is on private property owned by residents on Fern Ann Falls Road, and it is their obligation to maintain the bridge. Indian Springs has no obligation – indeed it has no right – to maintain a bridge on property owned by others, and nothing in any county or other document suggests otherwise.

The documentation of the easement route was further supported by trial testimony. Neil Eberhard, the then-member of the board of directors who signed the declaration of easement on behalf of Indian Springs HOA, confirmed that "both associations worked together to come up with a way to satisfy the county to get the streets – to get Iverson privatized and the Fall streets privatized."[20] He "very definitely" recalled "what the route was that this easement created that [abutting landowners] were to use," and it was the route on Exhibit B: "on the exhibit it is plainly marked by hash lines that allow egress and ingress to Fern Ann Falls."

---

[20] Mr. Eberhard explained: "Indian Springs had a set of streets that were private per se. And Iverson was not."

Robert D. Hillshafer, who was general counsel for both Indian Springs and Indian Falls HOAs at the time and participated in the preparation of both easement declarations, testified at length and in detail to the same effect – that it was never the intent of Indian Springs to provide the abutting landowners the right to drive over Indian Springs private streets; "[t]he limitation was Iverson Road." As to the use of the plural "streets," Mr. Hillshafer testified that "the only thing that the Springs was really granting was Iverson," and "[s]o the plural of street is probably more – creates a misimpression that shouldn't be there."

### c.    Conclusions

In the face of the language confining the easement to the private streets "depicted on the Map attached," the contemporaneous documents to the same effect, and the testimony, the only reasonable construction of the words in the Indian Springs easement declaration is that it is confined to Iverson Road. In other words, returning to plaintiff's contentions, we find the plural reference to private "streets" in the easement grant to be of no significance. No other conclusion is reasonably sustainable. Plaintiff has an express easement of ingress to and egress from her ranch property through Indian Springs, but the easement route is confined to Iverson Road.

That returns us to the third party movants' status as indispensable parties to plaintiff's quiet title action. As we have said, the trial court relied for its contrary conclusion, as does plaintiff, on the recital in the easement declaration that Indian Springs HOA was "the owner of certain common areas within Indian Springs Estates, including the private streets through the project . . . pursuant to" the CC&R's. The court reasoned that the

third party movants did not have a property interest in the private streets that was injuriously affected, because they had only "a non-exclusive, reciprocal right of access regarding the Private Streets." As we have seen, that is not the case; third party movants (and other individual homeowners) own their lots to the mid-point of the private street; there is no evidence to the contrary.[21] As for the quoted recital language, it may be an infelicitous turn of phrase, but in fact, nothing in the CC&R's or

---

[21] In addition to the undisputed evidence that the Indian Springs tract map showed the lots extended to the mid-line of the street, several owners testified to their understanding that this was so. For example, Mr. Eberhard, who resided in Indian Springs until 2000, testified that his understanding was that, as a member of Indian Springs, he "owned to the middle of the road" and that "all the members owned likewise to the middle of the street." Mr. Hillshafer, who had been counsel for the HOAs, likewise testified that the interior streets within Indian Springs, other than Iverson Road, were "owned by the individual lot owners," and were "[s]ubject to reciprocal easements granting certain duties and obligations to the Association for maintenance and repair and replacement." Iverson Road, by contrast, at the time of the easement declaration and privatization, was not owned by individual lot owners, and when Mr. Eberhard signed the declaration of easement, he did not "encumber the fee interest of any member of the association." Mr. Hillshafer also testified it was his understanding that, "once the public interest on Iverson Road was vacated, that Indian Springs, as a successor in interest, was to step into the shoes as the owner and undertake control of Iverson."

other documents in the record suggests that Indian Springs HOA "owns" the private streets.[22]

In addition to the ownership issue, the trial court reasoned (and plaintiff argues) that Indian Springs HOA was the only necessary party because of its authority to enforce all provisions of the CC&R's "by appropriate means, including without limitation, . . . the commencement of actions."[23] The court also cited Civil Code section 5980, which gives a homeowners association standing "to institute, defend, settle, or intervene in litigation . . . in its own name as the real party in interest and

---

[22]    Mr. Hillshafer, who was responsible for preparation of the easement declarations, was questioned about the quoted language and said this: "Well, I don't think it was really intended to indicate that the association owned the private streets, but it sort of implies that in here, so it could have been worded more accurately."

[23]    Plaintiff also points to a 1996 grant of easement executed by Mr. Eberhard on behalf of the Indian Springs HOA, granting an easement to the owner of what is now Indian Oaks (Tract No. 44327) over the private streets in Indian Springs. Plaintiff says this shows Mr. Eberhard was authorized to bind Indian Springs homeowners on other occasions "without needing individual signatures of each homeowner." We do not see how this proves anything with respect to the easement declaration at issue in this case. Indeed, when questioned about the 1996 easement, Mr. Eberhard testified he believed he had authority to bind Indian Springs HOA without all 57 lot owners' signatures, "[u]nderstanding that [the grantee/owner of Indian Oaks] at that time controlled a major part of the 57 lots [in Indian Springs] and having had discussions and meetings with the rest of the homeowners, yes, I felt I was authorized."

34

without joining with it the members," in specified matters, including "[e]nforcement of the governing documents" and to repair property damage (*id.,* subd. (a)). But this is a quiet title case, not a suit to enforce any provision of the governing documents or to repair property damage, and section 5980 is irrelevant to an owner's right to be joined as an indispensable party to a quiet title claim affecting his property.[24]

In sum, because the third party movants were, as they contended, necessary parties to plaintiff's quiet title action, the judgment against the individual homeowners cannot stand. And even if it could, the trial court's grant of an express easement over the private streets of Indian Springs was erroneous, as the express easement is confined to the portions of Iverson Road depicted on the map.

## 2. Other Claims on Appeal

Even if it were proper to quiet title in the absence of individual homeowners, we would reverse the judgment, as we find no merit in plaintiff's claims of prescriptive and equitable easements over the private streets of Indian Springs and the Lenope roadway.

### a. The prescriptive easement claim

As has been mentioned, plaintiff alleged a prescriptive easement "in the alternative" to her claims of an express

---

[24] The trial court also pointed to the provision of the maintenance agreements between Indian Springs and Indian Falls stating the agreements were binding on the parties, "including the members of the Associations, and each of their successors and assigns." Of course that is so, but the easements referred to in that agreement, as we have found, do not affect the private streets of Indian Springs other than Iverson Road.

35

easement. In its statement of decision, the trial court did not address that claim, finding only express easements. But the trial court entered the judgment drafted by plaintiff "[r]egarding plaintiffs' first cause of action for quiet title based upon an express easement, or, alternatively, a prescriptive easement." (Some capitalization omitted.) Plaintiff contends that "a quiet title judgment based on a prescriptive easement was awarded by the Trial Court." We think not.

The statement of decision has no findings by the trial court supporting a prescriptive easement. A prescriptive easement requires "use of the property which has been open, notorious, continuous and adverse for an uninterrupted period of five years." (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570 (*Warsaw*).) The statement of decision does not discuss the elements of a prescriptive easement, or even mention the term "prescriptive easement."

The trial court's ruling on third party movants' motion to vacate the judgment states the court found express and equitable easements in plaintiff's favor over certain private streets located within Indian Springs but says nothing about a prescriptive easement.

In short, it is clear the court did not find a prescriptive easement, despite plaintiff's closing trial brief contending she had established a prescriptive easement. "Whether the elements of prescription are established is a question of fact for the trial court." (*Warsaw, supra,* 35 Cal.3d at p. 570.) Here, the trial court made no fact findings on those elements. Nor do the circumstances of this case permit us to infer the existence of any such findings – indeed, plaintiff says nothing in her brief about implied findings. Nor could she.

36

Defendants requested a statement of decision, but plaintiff did not. Plaintiff did not object to the statement of decision, and opposed defendants' application to vacate the statement of decision. Plaintiff's opposition argued the statement of decision "included a detailed discussion of facts and conclusions of law in support of its decision." Under these circumstances, the doctrine of implied findings (requiring an appellate court "to infer the trial court made all factual findings necessary to support the judgment" (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58)) plainly does not allow us to infer the court awarded a prescriptive easement. (Cf. *id.* at p. 59 ["Litigants must also bring ambiguities and omissions in the statement of decision's factual findings to the trial court's attention—or suffer the consequences."].)

Finally, we would in any event conclude there was insufficient evidence of a prescriptive easement over the private streets of Indian Springs. Plaintiff contends her use was "open, notorious and hostile for a continuous period of five years commencing no later than 1999." She relies on her testimony that she traveled to the ranch property daily since 1996,[25] and on

_____

[25] Specifically, plaintiff cites her testimony that, during the time she lived in Indian Springs (from 2003 to 2007) and in Indian Oaks (from 2008 to 2012), she continuously traveled to the ranch property "on a daily basis" because her "horses live[d] there" and she "checked on them on a daily basis." Since 1996 when she purchased the ranch, her usual method of accessing the ranch was over roads now known as La Quilla and Taima (Indian Springs) and Peak and Lenope (Indian Oaks). She estimated the number of times she used "the trails, streets and roadways over Indian Springs and Indian Oaks," from 1996 to 2014, as "thousands."

the testimony of her expert witness in aerial photography analysis (David Ruiz), who testified to the existence in 1999 of "well-defined, well-traveled" roadways and "evidence of vehicular traffic" over those roadways in what would later be developed as Indian Oaks. (These roadways then connect with Taimi Avenue in Indian Springs.)

The cited evidence does not establish continuous hostile use since 1999. The period from 1999 to 2002 is not a five-year period, even assuming other elements of a prescriptive easement were met. (There is no evidence the then-owner of the area that was later developed as Indian Oaks had actual or constructive notice of plaintiff's daily trips over the dirt roads and trails Mr. Ruiz identified. (See 6 Miller & Starr, Cal. Real Estate (4th ed. 2019) Easements, § 15:35 ["The fact that a user claims a right to use the property adversely to the rights of the owner of the servient tenement must be communicated to the property owner, or the use of a claimed easement must be so obviously exercised as to constitute implied notice of the adverse claim"; the owner "must have notice that unless some action is taken to prevent the use it may ripen into a prescriptive easement"].))

From late 2002 until 2012, plaintiff owned property and lived in Indian Springs and Indian Oaks, and so was entitled to use the private streets of both communities. "Prescription cannot be gained if the use is permissive." (12 Witkin, Summary of Cal. Law (11th ed. 2018) Real Property, § 418, p. 483.) And the period from 2012 to the filing of this litigation in 2014 is not a five-year period.

Plaintiff argues her residency does not negate her "hostile use" of the streets, because both Indian Springs and Indian Oaks HOAs raised objections about her use. We disagree. As to Indian

Springs, plaintiff cites her receipt of a letter from Indian Springs HOA dated August 11, 2008. The letter stated that hay trucks and horse trailers were using the interior streets of Indian Springs for access to her ranch, and stated that "Fern Ann Falls traffic is only allowed to use Iverson for ingress and egress and not the internal streets of Indian Springs. Please direct this traffic accordingly." That is the only evidence plaintiff cites to support "hostile use" of Indian Springs private streets while she resided in Indian Springs and then Indian Oaks between 2002 and 2013.[26] Plaintiff testified that when she received that letter, she was "not sure" if she called the Indian Springs HOA "to challenge what this letter said," instead saying, "I honestly don't know." This is not substantial evidence of continuous hostile use of the private streets of Indian Springs during the ensuing five years.

The same is true of the Lenope roadway. The trial court made no findings of or reference to a prescriptive easement in its statement of decision. Plaintiff claims to have continuously used what is now the Lenope roadway since she bought the ranch in 1996. But she was unable to identify her route from the photographs her expert, Mr. Ruiz, used, and Mr. Ruiz himself

---

[26] Plaintiff cites other exhibits dated between 2005 and 2008, but these show objections from the Indian Oaks HOA to the use of her property in Indian Oaks. These exhibits included lawyers' letters and a request for alternative dispute resolution by Indian Oaks HOA; they alleged breach of the Indian Oaks CC&R's by operating a business out of plaintiff's residence, nuisance and other claims. Plaintiff does not tell us how this was resolved, but she testified that Indian Oaks did not take any additional formal enforcement actions against her.

testified (see fn. 11, *ante*) that his October 21, 1999 aerial photograph, and earlier photographs, showed no evidence of vehicle use over what would become the Lenope property. (See *Warsaw, supra,* 35 Cal.3d at p. 571 ["the existence of a prescriptive easement must be shown by a definite and certain line of travel for the statutory period"].) And, as we have seen, as of November 2002, when she moved to Indian Springs, plaintiff was entitled to use the roadways in Indian Oaks and Indian Springs, so her use was not hostile. Moreover, she owned the Lenope property as of October 2005, so her use of the Lenope roadway that she built over it cannot have been adverse while she owned the property, which she did until she sold it to O'Neal in 2012. The record does not support a prescriptive easement.

### b. The equitable easement claim

That brings us to the trial court's award of an equitable easement. The statement of decision does not discuss or state any findings concerning the requirements for granting an equitable easement. Defendants objected to the lack of any explanation of the factual or legal basis for finding an equitable easement, but the trial court denied defendants' application to vacate the statement of decision.

We begin with the legal authorities on equitable easements.

"While the resolution of factual *disputes* is left to the trial court, appellate courts may determine whether the elements of an equitable easement have been established by the facts as a matter of law." (*Hansen v. Sandridge Partners, L.P.* (2018) 22 Cal.App.5th 1020, 1028 (*Hansen*).)

The law on equitable easements is well-explained in *Shoen v. Zacarias* (2015) 237 Cal.App.4th 16 (*Shoen*). There are three requirements, described in terms of the landowner and the

40

trespasser. Judicial creation of an easement over a landowner's property is permissible "provided that the trespasser shows that (1) her trespass was ' "innocent" ' rather than ' "willful or negligent," ' (2) the public or the property owner will not be ' " 'irreparabl[y] injur[ed]' " ' by the easement, and (3) the hardship to the trespasser from having to cease the trespass is ' " 'greatly disproportionate to the hardship caused [the owner] by the continuance of the encroachment.' " ' [Citations.] Unless all three prerequisites are established, a court lacks the discretion to grant an equitable easement." (*Id.* at p. 19; see *id.* at p. 21 [courts "resolve all doubts against their issuance"].)

Further, "the equitable nature of this doctrine does not give a court license to grant easements on the basis of 'whatever [a court] deems important,' even when [the three] prerequisites are absent." (*Schoen, supra,* 237 Cal.App.4th at p. 19.) *Schoen* also explains that "[a]lthough the equitable easement doctrine is sometimes called the doctrine of 'balancing of conveniences' or the doctrine of 'relative hardships' [citation], these labels are somewhat misleading. These labels suggest that an equitable easement may issue if the conveniences or hardships merely favor the trespasser, when the doctrine actually requires that they tip disproportionately in favor of the trespasser. These labels also suggest that the conveniences or hardships between the trespasser and property owner start out in equipoise, when the doctrine actually requires that they begin tipped in favor of the property owner due to the owner's substantial interest in exclusive use of her property arising solely from her ownership of her land." (*Ibid.*)

*Schoen* discusses at length the reasons for requiring the seeker of an equitable easement "to prove that she will suffer

41

a *greatly disproportionate* hardship from denial of the easement than the presumptively heavy hardship the owner will suffer from its grant." (*Schoen, supra,* 237 Cal.App.4th at p. 20; see *id.* at p. 21 ["additional weight is given to the owner's loss of the exclusive use of the property arising from her ownership, independent of any hardship caused by the owner's loss of specific uses in a given case"; "[t]o allow a court to reassign property rights on a lesser showing is to dilute the sanctity of property rights enshrined in our Constitutions"].)

And finally, the authorities state that the first factor – showing the trespass is innocent rather than willful or negligent – "is the most important." (*Hansen, supra,* 22 Cal.App.5th at p. 1028; *id.* at p. 1029 [" 'If the [encroaching] party is willful, deliberate, or even negligent in his or her trespass, the court will enjoin the encroachment.' "].)

In this case, the court discussed none of these points in its statement of decision. Several months later, in its ruling denying third party movants' motion to vacate the judgment, the trial court stated that its finding of an equitable easement was proper, "as the parties' relative hardships were balanced." The court stated that plaintiff "ha[d] shown that due to the condition of a certain bridge in the project, it would have been inequitable to Plaintiffs to not find an easement." The court said that the homeowners associations did not demonstrate "any comparable hardship" at trial, "given that their right to use the Private Streets has not been diminished."

The trial court erred, abusing its discretion by failing to apply the principles necessary to the award of an equitable easement. As *Shoen* tells us, unless all three prerequisites are met, a court does not have license to grant easements "on the

42

basis of 'whatever [a court] deems important.' " (*Shoen, supra,* 237 Cal.App.4th at p. 19.)  Here, the trial court omitted from its postjudgment analysis any consideration of the fact that plaintiff bought the ranch property knowing the condition of the bridge, for which property owners in Fern Ann Falls – not defendants – are responsible.  In addition, the court's conclusion that the right of Indian Springs homeowners to use the private streets "has not been diminished" completely disregarded the homeowners' substantial interest in the exclusive use of their property (presumably because the court had erroneously concluded they had no ownership interest).  The trial court likewise disregarded the adverse impact on homeowners of opening their private streets to commercial traffic by the 40-foot semi-trucks servicing plaintiff's ranch during Mr. Cano's tenancy.  The trial court focused only on the condition of a bridge for which Indian Springs has no responsibility.

Thus the trial court failed entirely to consider a critical point:  whether plaintiff's conduct was innocent, rather than willful or negligent.  It seems clear plaintiff did not establish innocent use of the private streets of Indian Springs.  Her claim to innocence is that, beginning in April 1996, she "worked two years and sought to expand the Fern Ann Falls bridge by seeking to have a bond measure passed so that money could be raised in order to allow for the bridge to be improved."  (Her petition described "the street commonly referred to as West Fern Ann Falls Road," and requested "the entire road and bridge be upgraded.")  Thus, she contends, she "attempted to do equity," but was prevented from doing so, because after she had collected

43

enough signatures, the county told her that "it's no longer eligible, because the community has been privatized."[27]

---

[27]    Plaintiff also states, without explanation or discussion, that "she is innocent as her Parcel 3 Easement set forth in her Deed [to the ranch] and the Indian Springs Easement Declaration establish her right to use the Indian Springs streets and the Lenope Roadway Easement." As we have seen, the easement declaration does not establish any such right (and plaintiff appears to have been unaware of the existence of the easement declaration until defendants filed their cross-complaint in this case).

As to the "Parcel 3 Easement set forth in her Deed [to the ranch]" (see fn. 12, *ante*), we do not see (and plaintiff does not explain) how the deed to her ranch can establish her innocent use of the streets of Indian Springs or the Lenope roadway. As noted earlier, the ranch deed's Parcel 3 is "[a]n easement for ingress and egress to be used in common with others over that portion of Fern Ann Falls Road, which road has been in use for more than twenty years in the past, and as it now exists, as of the date of this conveyance [January 24, 1996]," followed by a metes and bounds description. Randall Smith, a licensed land surveyor and expert witness for plaintiff, testified that "Parcel 3" in the deed to plaintiff's ranch "describes a roadway located within Parcel 3," and (referring to an exhibit) testified Parcel 3 was "highlighted in yellow." The highlighted area encompassed the private streets in Indian Oaks and Indian Springs, and Mr. Smith testified that "the Parcel 3 description of the Fern Ann Falls Road exists somewhere within this yellow area." We do not see how reference to a Fern Ann Falls Road that does not now exist anywhere in Indian Springs or Indian Oaks, but formerly existed "somewhere within this yellow area," can establish plaintiff's innocent belief she was entitled to use the Indian Springs private streets or the Lenope roadway, particularly in light of her own testimony (see text, *post*).

44

The evidence cited does not establish plaintiff's innocent use of the private streets of Indian Springs. Indeed, it shows she knew when she purchased the ranch that her access involved use of the bridge on Fern Ann Falls Road. Plaintiff testified that "[w]hen I bought the property in 1996, the realtor told me that everybody wanted to chip in to fix that bridge. Because I wasn't going to buy it because of the bridge. But then he assured me, we have two accesses and everyone wants to fix that bridge. And I quickly found out that nobody wanted to fix the bridge." Plaintiff testified at trial that she "started using a back route as soon as [she] purchased the ranch property," but she testified at her deposition that, when she bought the ranch property, she " 'didn't realize there was another way [other than over the bridge]. So once I found the other way to go, I stopped using the bridge.' " She testified it was "only when [she] discovered the back route that delivery companies stopped using the bridge." When asked at her deposition, " 'And how did you discover that you could go the back way?' " plaintiff responded, " 'As they started developing the neighborhood and they made streets that emptied out the dirt that connected to Fern Ann Falls.' " (Grading began in Indian Oaks in 2002.)[28]

In short, we conclude plaintiff did not establish the innocence factor. Plaintiff insists that the unsafe condition of the Fern Ann Falls bridge makes it "inequitable that this access way

[28] When she was asked why she purchased the Lenope property in 2005, plaintiff testified that, "[e]ver since I bought the property on Fern Ann Falls [the ranch], I was always trying to get that parcel of land that butted up to Fern Ann Falls [the Lenope property], because I wanted to have an appropriate access to [the ranch]."

45

be the sole access route of travel" to her ranch.  But her evidence does not show the necessary element of innocent use.  The cases plaintiff cites all involve innocent parties, and most of them involve completely landlocked properties.[29]  We conclude that plaintiff knew from the day she purchased the ranch in 1996 – at a time when Indian Oaks (over which she must pass to reach the

---

[29]     In *Hinrichs v. Melton* (2017) 11 Cal.App.5th 516, the trial court found the plaintiff was innocent and his parcel would be landlocked without an easement, while the defendants seldom visited that portion of their property, which had little or no development potential.  (*Id.* at pp. 523, 524.)  In *Tashakori v. Lakis* (2011) 196 Cal.App.4th 1003, the plaintiffs purchased the property "with the innocent belief that an easement to the public road existed" and the easement was "the sole means of accessing their property," while the defendants "would suffer virtually no harm at all" from use of the shared driveway, which they had never used and was in an area completely separated and not accessible from the main portion of their property without scaling a fence.  (*Id.* at pp. 1010, 1007.)  In *Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, the court affirmed grant of an equitable easement to the defendants where the roadway in question was "the only access" to the defendants' parcels, the defendants would suffer a "catastrophic loss" as balanced against "no or insignificant loss" to the plaintiff, and the plaintiff "purchased his property with full knowledge of the historical use of the roadway," also stating that "this is not a doubtful case." (*Id.* at p. 266.)  And in *Miller v. Johnston* (1969) 270 Cal.App.2d 289, "[t]he required encroachment was not the result of any act or omission on [the plaintiffs'] part," and if they were "denied the right to continue the use of the defendants' property they cannot secure practical access to their property without affecting the existing property rights of their other neighbors . . . ."  (*Id.* at p. 307.)

46

ranch over her preferred route) was completely undeveloped – about the nature of the Iverson Road access and the shortcomings of the bridge.  There can be no equitable easement in these circumstances.

Again, the same principles apply to the Lenope roadway. The trial court awarded an equitable easement based on the bridge it found to be unsafe, without regard to the requirements for judicial creation of an equitable easement.  Moreover, because we have concluded plaintiff cannot use the private streets of Indian Springs, she has no access to the Lenope roadway in any event.

### c.      The remaining issues

That leaves us with the recorded easement over the Lenope roadway.  The question would ordinarily be moot, since plaintiff cannot reach the Lenope roadway without using the private streets of Indian Springs.  But O'Neal's cross-complaint, on which the trial court granted judgment against O'Neal, sought to quiet title "against all adverse claims of [plaintiff]."

O'Neal contends the trial court erred, among other reasons because the easement recorded in 2010 over the Lenope property (the servient tenement) is expressly for the benefit of the Friese property (the dominant tenement), and makes no reference to plaintiff's ranch property.  The grant states:  "April Hart, the owner of the property known as 22602 Lenope Place, hereby grants to Ranch at the Falls LLC [her alter ego and then-owner of the Friese property] permanent easement for the benefit of the property known as 22590 Fern Ann Falls [the Friese property] over/under/on/across the land located as described in Exhibits A and B for ingress and egress purpose(s).  [¶]  This easement shall

47

be covenant running with the land and shall be binding on the successors, heirs and assigns of both parties hereto."

Plaintiff's answer to this is that when she sold the Lenope property to Mr. O'Neal and Ms. Maniago in 2012, they assured her "that they would never try and overturn that easement," and when she sold the Friese property to Mr. Friese in 2013, she "meant to reserve a right to use the Lenope Roadway Easement." But she did not do so. (Plaintiff then explains that when she recorded the easement over the Lenope property (in 2010), she "wanted to put all three of my addresses in," but the clerk's office "told me I can only use one address, and so I wanted to use the address that was associated with Ranch at the Falls because my intent was to give – the easement was for the ranch.") She then says that "she did not intend to merge the Lenope Roadway Easement when she sold 22590 Fern Ann Falls Road to Mr. Friese."

It appears to us that plaintiff's argument about the merger doctrine misses the critical point, and that the merger doctrine is not relevant in this case. To explain: The merger doctrine refers to the principle that "an easement usually is extinguished when the same person acquires the fee title to both the dominant and servient tenements." (6 Miller & Starr, Cal. Real Estate, *supra,* Easements, § 15:75.) Here, when plaintiff recorded the Lenope roadway easement, she (or her alter ego) owned both the dominant tenement (the Friese property) and the servient tenement (the Lenope property), so she was effectively granting an easement to herself. However, "[e]ven in circumstances where there might otherwise be a merger, whether or not there has been a merger depends on the actual or presumed intention of the

48

person who holds both interests, and there will be no merger if it would be inequitable." (*Ibid.*)

In this case, the merger doctrine does not come into play. Plaintiff is really saying that in 2010, she intended to grant an easement over the Lenope roadway to her ranch property, not to the Friese property. If she had done so, the applicability of the merger doctrine, and her intent not to merge the "the fee title to both the dominant and servient tenements" would be relevant. But she did not grant the easement to her ranch property. The easement she granted is quite clear. Plaintiff, then owner of the servient tenement (the Lenope property) granted an easement "running with the land" for the benefit of the Friese property at 22590 Fern Ann Falls (the dominant tenement). She now says she intended to do something else – to grant an easement to her ranch property as the dominant tenement.[30] But her intent does not matter if the easement grant was not ambiguous.

"It is fundamental that the language of a grant of an easement determines the scope of the easement." (*Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1499.) Grants are to be interpreted like contracts in general. (*Ibid.*) "A document that is clear and unambiguous is interpreted by an

---

[30] Mr. Friese testified that plaintiff offered to purchase the property back from him. He stated that, when this dispute over the Lenope easement came up, and he told plaintiff that he (as owner of the dominant tenement) had control of the Lenope easement, plaintiff "offered to buy back the property," and he refused that offer. (In an e-mail exchange on May 13, 2014, plaintiff wrote Mr. Friese stating, "I begged for you to sell the property to the trainer at my ranch and you would have been made 'whole'.")

examination of the document itself and by a comparison and analysis of all of its provisions.  When there is an uncertainty or ambiguity in the instrument conveying the easement, the court can examine the surrounding circumstances and the relationship between the parties and their respective properties."  (6 Miller & Starr, *supra*, § 15:16, fns. omitted.)

In short, while plaintiff may have intended to do something other than what she did, there is no uncertainty or ambiguity in the instrument conveying the easement, which makes no reference at all to the ranch property.  We do not see any legal basis on which a court may revise the written instrument.

## CONCLUSION

Because there are no enforceable easements over the private streets of Indian Springs (except over Iverson Road), or over the Lenope roadway (except in favor of the Friese property), there is no basis for an award of damages or an injunction against any of the defendants, and no basis for the award of attorney fees.  Plaintiff's claims for nuisance, declaratory relief, and intentional interference with contractual relations fail along with her easement claims.  Our conclusions make it unnecessary to address other points raised by defendants.

## DISPOSITION

The judgment on plaintiff's complaint is reversed and the cause is remanded to the trial court with directions to vacate the injunctions and the award of attorney fees, and to enter a new judgment in favor of defendants.  Indian Springs Homeowners Association, Keith O'Neal and Gladys Maniago are entitled to judgment on their cross-complaint declaring there are no enforceable easements over the private streets of Indian Springs (except over Iverson Road) or over the Lenope roadway (except in

favor of the Friese property).  Appellants shall recover their costs on appeal.

GRIMES, Acting P. J.

WE CONCUR:

STRATTON, J.

WILEY, J.

# APPENDIX A

